SUN FIRE OFFICE, OF LONDON, ENGLAND, V. EDWARD
A. AYERST.

FILED JUNE 6, 1893.    No. 4851.

1. **Review:** THE VERDICT of the jury will not be disturbed unless clearly against the preponderance of the evidence upon which the cause was tried.

2. **Fire Insurance:** ACTION ON POLICY: VALUE OF FURNITURE AND WEARING APPAREL: INSTRUCTIONS. In an action upon an insurance policy to recover damages caused by fire to insured household furniture and wearing apparel in actual use it was not error to instruct the jury that of the property destroyed they should, if possible, find the fair market value, otherwise that they should find the fair value from the evidence, and that such value was not what a junk shop or second-hand dealer would give for them or what they would bring under extraordinary circumstances or at a forced sale.

3. **Special Findings:** REVIEW. Where averments of the answer are met in the reply by matter in avoidance conjointly with a denial of such averments, the special finding of a jury, sustaining such denial, will not be set aside as foreign to the issues joined.

4. **Witnesses:** EVIDENCE OF REPUTATION: IMPEACHMENT. Evidence of the general reputation of a witness for truth and veracity, to be available for the impeachment of such witness, must have reference to such reputation at his present or recent place of residence. It should not relate to a residence which had ceased two and a half years before such witness testified.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*John L. Webster* and *Brome, Andrews & Sheean,* for plaintiff in error.

*Frank T. Ransom* and *Gurley & Marple, contra.*

RYAN, C.

The petition wherein Edward A. Ayerst was plaintiff and the Sun Fire Office of London, England, was defend-

Sun Fire Office v. Ayerst.

ant was filed in the office of the clerk of the district court of Douglas county on December 31, 1889. The averments thereof were in substance that on September 4, 1888, the said plaintiff was the owner of the personal property in Sioux Falls, Dakota, upon which on that day he effected an insurance with said defendant for the premium of $19.50, at the time duly paid. The policy issued by the defendant to plaintiff aforesaid insured against loss or damage by fire in the sum of $3,000, on plaintiff's household furniture, useful and ornamental, kitchen furniture and utensils, family wearing apparel and family jewelry, printed books, plate and plated ware, pictures, paintings, and engravings, and their frames (not to exceed cost price), piano or organ, sewing machine, family supplies, and fuel. The defendant, by this policy, agreed that if said property, or any part thereof, should be destroyed or damaged by fire, at any time between noon of September 4, 1888, and the same hour of September 4, 1889, the said defendant would pay or make good all such immediate loss or damage, not exceeding, in respect to the several matters in the policy specified, the sum set opposite thereto respectively, not exceeding in the whole the sum of three thousand dollars. There were contained in said policy the minute details as to conditions avoiding the policy, proof of loss, etc., usually found in such instruments, of which those discussed in argument will alone be considered, and these will, as necessary, be fully described in that connection. The petition further alleged that on January 10, 1889, plaintiff therein removed the said insured property from Sioux Falls, Dakota, to Omaha, Nebraska, and placed it in a dwelling house and barn situated at 2119 Binney street, lot 10, block 8, Kountze Place addition to Omaha, and that thereupon said defendant, by its duly authorized agent at Omaha, transferred and indorsed said policy in writing, and by said writing made said policy cover and insure the said property where it had been placed in Omaha. This alleged removal indorsement was as follows:

"REMOVAL INDORSEMENT.

"Sun Fire Office Insurance Company, London, England.

"No. of policy, 3,710,250.

"No. of renewal, ——. Indorsement dated 1–11, 1889.

"Amount insured, $3,000.00. Name of assured, E. A. Ayerst.

"Old rate, 65.

"New rate, —.

"Expires Sept. 4–89.

"Old location, Sioux Falls, Dak.

"This policy is hereby transferred to cover on the same property while contained in the two-story frame shingle roof building occupied as dwelling and in barn adjacent situated as follows: 2119 Binney street, lot 10, block 8, Kountze Place addition to Omaha, Neb. The insurance as originally effected being discontinued and all liability in the former location to cease from this date.

"Additional premium, $——.

"Return premium, $——.

"COMSTOCK, MARTIN & PERFECT,
               "*Agents at Omaha, Neb.*"

The petition alleged that, on January 12, 1889, all of the insured property situated in the said barn was burned and wholly destroyed by fire, the property so burned being of the value of five thousand dollars; that on February 2, 1889, the aforesaid plaintiff gave to said defendant due notice and proof of said fire and loss, and that on February 25, 1889, this, at defendant's request, was supplemented by further proof by the delivery to defendant of an inventory of the destroyed property aforesaid, giving a description of the quality, quantity, and cost of each piece thereof as required by the said defendant; after which, on April 2, following, upon defendant's requirement to that effect, plaintiff submitted fully to an examination on oath as provided for in said policy. The plaintiff in his petition claimed that notwithstanding the objections

made as to the sufficiency of proof of loss, the above re-
cited proceedings constituted sufficient proof in that behalf,
and having alleged damage to the amount of three thousand
dollars, the plaintiff prayed judgment against defendant for
that amount with seven per cent interest per annum from
February 2, 1889, and costs of suit.   In the record is con-
tained a copy of the summons and of an alias summons
with the indorsements on each.   These, in this case, are of
no use whatever, and only serve to cumber the record;
they should therefore have been omitted therefrom.   The
defendant answered in the district court, denying each al-
legation of plaintiff's petition not specifically admitted in
said answer.   The execution of the policy and payment of
the premium, as stated in the petition, were admitted, as was
also the destruction of a portion of the insured property
on January 12, 1889.   Specifically, the answer denied that
on January 11, 1889, the defendant, by its duly authorized
agents at Omaha, transferred and indorsed said policy in
writing and thereby made said policy cover and insure said
property, or become responsible for loss or damage to the same
in any manner whatever, or at any place except at the place
and upon the premises where said property was located at
the time of the issuance of the original policy.   The an-
swer denied that Comstock, Martin & Perfect were the
duly authorized agents of defendant at Omaha on January
11, 1889, or at any other time, and denied that said Com-
stock, Martin & Perfect had any authority at any time or
in any manner whatever to make the so-called "removal
indorsement" alleged in plaintiff's petition, but the said
defendant averred and charged the fact to be that said
Comstock, Martin & Perfect were not authorized on said
January 11, 1889, or at any other time, to make any in-
dorsement upon said policy, or to bind said defendant in
any manner in respect thereto.   The answer further charged
that plaintiff had been guilty of fraud and misrepresenta-
tion, and omitted to make known facts material to the risk

in and about procuring to be made by Comstock, Martin
& Perfect on January 11, 1889, a pretended "removal in-
dorsement," for that on or about December 7, 1888, and at
divers times prior thereto after October 18, 1888, plaintiff
was notified and advised by defendant through its agents
at Sioux Falls, who had issued said policy, that defendant
was unwilling longer to carry said risk and desired to
terminate the same and refund the ratable proportion of the
premium for the unexpired term of the policy, and on said
date requested plaintiff to return said policy to said agents
with the cancellation recited thereon, properly signed as re-
ceived from said agents for the ratable proportion of the
premium for the unexpired term of the policy. The an-
swer alleged further the complete failure of the plaintiff
to comply with these requirements, and the procuring from
Comstock, Martin & Perfect of said "removal indorse-
ment" to be made by them while they were in total igno-
rance of said facts, as was well known to the plaintiff at
the time. The defendant, in the fifth paragraph of its an-
swer, further alleged that the plaintiff ought not to recover,
for that by the above policy it was provided that "This
policy shall become void unless consent in writing is in-
dorsed thereon by and on behalf of the society (defendant)
in each of the following cases: If the insured have or shall
hereafter obtain any other policy or agreement for insur-
ance, whether valid or not, on the property above mentioned
or any part thereof," whereas, as the defendant averred at
the time the above policy was issued to plaintiff, said
plaintiff had another policy of insurance covering the same
property; the said prior policy, being for $2,000, was issued
by the Insurance Company of Dakota, and by its own pro-
visions not terminating until November 1, 1888, and, as
the defendant alleged, the existence of this prior insurance
was fraudulently concealed from defendant's agents when
they issued the policy sued on.

The reply averred that Comstock, Martin & Perfect

were the duly authorized agents of defendant on January 11, 1889, and both before and after that date; that the acts of said agents in respect to the policy sued on were well known to defendant, by whom no objection was made to said acts until the answer was made in this cause.   The reply alleged the various matters stated in the petition as to the proofs required and the examination to which plaintiff was subjected, and stated that in each of these the object of defendant was solely to ascertain the value of the property insured, and that no question of the authority of the agents of defendant was touched upon in said examination, neither was the validity of said policy questioned by defendant, nor was any objection made to the "removal indorsement" placed upon said policy by the said Comstock, Martin & Perfect, whereby plaintiff insisted that all such objections were waived.   The reply originally denied each averment made in the answer as to the existence of another policy of insurance and the fraudulent concealment thereof from the defendant's agent who issued the policy sued on at the time of its issuance.   After the argument, but before the final submission of the case to the jury, plaintiff withdrew the denials contained in the last sentence and substituted the following amendment:

"Replying to the 5th paragraph of defendant's answer, plaintiff alleges that the defendant at the time of the issuing of the policy mentioned in the petition knew of the prior insurance mentioned in defendant's answer, and knew that said prior insurance existed, and knowing such fact at the time plaintiff applied for the policy mentioned in the petition, defendant issued the same notwithstanding said prior insurance; and replying further to said paragraph, plaintiff denies each and every allegation therein contained."

On April 16, 1891, the trial having been concluded, the jury returned a general verdict in favor of plaintiff for $3,369.25, at the same time returning answers to the special interrogatories submitted, as follows:

"First—At the time the policy of insurance sued upon in this action was issued, did the plaintiff have a policy of insurance covering the same property by the Insurance Company of Dakota? Answer yes or no. Answer: No.

"Second—Where were the goods claimed to have been destroyed at the time the removal indorsement was made upon the policy in suit by Comstock, Martin & Perfect? Answer: Omaha, Neb., at the depot.

"Third—At the time plaintiff applied to Comstock, Martin & Perfect, and asked that the removal indorsement be placed upon the policy in suit, had he been advised or did he know that the defendant had instructed its local agents at Sioux Falls to cancel the policy of insurance in suit? Answer yes or no. Answer: No."

A motion for a new trial having been overruled, judgment was rendered for the amount found due by the general verdict. To reverse this judgment the cause is brought into this court by petition in error, in which the Sun Fire Office, of London, is plaintiff.

1. The errors alleged will be considered in the order in which they were presented in the brief of plaintiff in error. The matter first and at most length complained of is, that the damages are excessive, the quality, quantity, and value of the insured property being out of all proportion to the circumstances of plaintiff, and indeed of any one else, and not capable of being crowded into the space where they were stowed, and because, from the length of time many of the articles had been in use, they must have been worn out and therefore of little or no value. These considerations, however, are only addressed to the credibility of the testimony of defendant in error. His evidence was full and explicit as to the description and price of each article, though to plaintiff in error it was intrinsically improbable. He was not contradicted as to these matters, neither was any effort made in that direction, though F. W. Harrington, the agent who wrote the policy sued on, testified that

when said policy was issued he examined the property insured. Under these circumstances the argument as to the inherent improbabilities of the testimony of the defendant in error are not sufficiently controlling to overcome the presumptions which exist in favor of the correctness of the verdict of a jury.

2. The second matter argued is as to the refusal of the court to give instruction eighth, requested by the plaintiff in error. It was as follows:

"No. 8. The plaintiff, in an action of this kind, is entitled to recover, if entitled to recover at all, only the fair market value of the property actually destroyed, and the burden of proof is upon plaintiff under the issues in this case to establish such fair market value by a fair preponderance of the evidence."

In the same connection, however, plaintiff in error insists that the court erred in giving instruction numbered $14\frac{1}{2}$, which is in the following language:

"No. $14\frac{1}{2}$. The plaintiff, in an action of this kind, is entitled to recover, if entitled to recover at all, only the fair market value of the property destroyed, and the burden of the proof is on the plaintiff under the issues in this case to establish such fair market value by a fair preponderance of evidence. The fair market value is not what a junk shop or a second-hand dealer would give, but it means a fair, reasonable market value of said property in this city, and not what the property would bring under extraordinary circumstances or by a forced sale. You must ascertain their value from a fair and impartial consideration of all the evidence in this case."

The first sentence in the instruction last copied is identical with the 8th instruction asked by the plaintiff in error. The matter added in the last two sentences in the last quoted instruction ($14\frac{1}{2}$), to the effect that the true value must be ascertained, not from what a junk shop or second-hand dealer would give, nor from what the property

would bring under extraordinary circumstances or a forced sale, was correct. The terms of the policy were, that the insurance company "will pay or make good all such immediate loss or damage," if the property during the term for which it was insured should be damaged or destroyed by fire. In the policy there is no reference to payment of the market value of the goods, or any other special description of value. The contract was to pay or make good the immediate loss or damage caused. The agent of the insurance company had very properly examined the property when it was insured. The policy clearly described the class of property upon which thereby the insurance was effected. The parties could have had in contemplation no such standard of valuation as would obtain if the contract had been for the sale of merchandise. It was not a contract in that nature, but was one to indemnify the insured for whatever loss should be caused to the insured property by fire during the time fixed in the policy. This policy provided that in case of damage to personal property the insured should forthwith cause it to be put in order, assorting and arranging the various articles according to their kinds, separating the damaged from the undamaged, etc. It would hardly be claimed in view of these provisions that if clothing was damaged by fire the inquiries upon a trial would be, first, what would have been the market value of the property before it was damaged, as fixed by a junk shop or a dealer in second-hand clothing; and then, what was the market value of such clothing after it was damaged, as fixed by the same class of authority, upon prices current, the damage to be ascertained by subtracting one of these items from the other. The policy itself discloses that the subject-matter was not marketable commodities, and it is not believed that in estimating the damage for which the insurer should answer the element of value as fixed in the market ought alone to control. There is no necessity of resort to such a

valuation to ascertain the immediate loss suffered.  If the insured articles of clothing, furniture, bedding, etc., have been destroyed, the question for determination in finding the amount of the recovery is what was the fair value of the property before it was destroyed.  In this it is not to be understood that any fanciful notions of the value entertained by the owner of such articles are properly to be considered, but rather what would the destroyed goods have been worth for the use of such people as ordinarily use goods of that class, provided they were in need of them; this value, on the one hand, not to be swelled by a sentimental partiality of its owner, and, on the other, not to be subjected to the odium and suspicion generally incident to second-hand clothing or furniture.  If any of the insured property was a marketable commodity, its value might by the jury be found from the prevailing market price, otherwise the simple fair value should govern. These suggestions embody the principle upon which the jury was instructed upon this subject, and fairly consider the objections and arguments made in criticism thereof by the plaintiff in error.

The views above expressed are not without support in other adjudicated cases involving the same question.  In *Gere v. Council Bluffs Ins. Co.*, 67 Ia., on page 276, Adams, J., delivering the opinion of the court, said: "The court instructed the jury to allow the fair value of the property.  The defendant assigns as error the giving of this instruction.  In our opinion there is no error in the instruction.  If there had been evidence that the property had a distinctly recognized market value, it might have been better to have instructed the jury to allow the market value; but there was no such evidence, and the instruction to allow the fair value appears to us to be unobjectionable."

In *Joy v. Security Fire Ins. Co.*, 48 N. W. Rep. [Ia.], 1049, the supreme court of Iowa said: ".The property in question consisted of old or second-hand furniture, the

market price of which it is usually very difficult to estab-
lish.    It cannot be said to have a fixed market value, and
we think that the price for which it was offered by the
owner is at least competent evidence to be considered by
the jury.    If such an offer is accepted, it would seem quite
conclusive that the property was worth the amount of the
offer.    If not accepted, it would be evidence tending to show
that the property was not worth more than that for which
it was offered.    It is not to be assumed, in the absence of
proof, that the offer was 'dictated by pressing circumstances'
or for other reasons that might render the proof of such
an offer of no avail; but if such 'circumstances' exist they
may be shown and thus give to the testimony the weight
to which it is entitled."

This subject is thus discussed in Sutherland, Dam-
ages, vol. 2, on page 387 : "If the article in question has
no market value, its value may be shown by proof of such
elements of facts affecting the question as exist.    Recourse
may be had to the items of cost and its utility and use.
And opinions of witnesses properly informed on the sub-
ject may also be given in respect to its value."

Under the circumstances of this case it is believed that
there was sufficient evidence of a proper character upon
which to submit to the jury the question of the amount of
loss sustained, and that the rules to be observed in the con-
sideration of that question were correctly stated by the
court to the jury.

3. The plaintiff in error insists that the fifth paragraph
of its answer, setting up the existence of an existing con-
cealed insurance upon the same goods covered by the policy
sued upon, was confessed by defendant in error's reply in
respect thereto.    The paragraph of the reply referred to
has hereinbefore been copied in full, and by an inspection
will be found to consist, first, of an averment of knowledge
of the existence of said prior insurance when the policy
sued upon was made; and second, a denial of each and

every allegation of the aforesaid fifth paragraph of the answer. Section 121 of the Code of Civil Procedure provides as follows: "In the construction of any pleading, for the purpose of determining its effects, its allegations shall be liberally construed with a view to substantial justice between the parties." Thus, considering the two parts of the reply, there is no difficulty in harmonizing them, each with the other, for, regarding one as a denial of the facts charged, the other may well be treated as though, contingently upon the plaintiff in error successfully establishing the existence of the prior insurance, the defendant had alleged a knowledge of such policy and waiver of objection thereto by the plaintiff in error. If these matters rendered this part of the reply so indefinite and uncertain that the precise nature of the charge or defense was not apparent, the court, upon motion, would undoubtedly have required it to be made more definite and certain. (Sec. 125, Code of Civil Procedure.) No objection was made for this reason, and it would manifestly be very unjust to deprive defendant in error of the benefit of his denial of the existence of a prior insurance, especially in view of the fact that the jury specially found that no such prior insurance existed.

4. There was refused the offer to prove the general reputation for truth and veracity of Mr. Ayerst, in Sioux Falls. The residence of Mr. Ayerst in the place last mentioned was from 1884 to October, 1888, at which time he removed to Omaha, where he resided during the interim between said last mentioned date and April, 1890, at which time he removed to Seattle, where he continued to reside until the date of the trial, which was in April, 1891. Between the termination of his residence at Sioux Falls and the date of the trial there was an interval of two years and six months. The decisions are not uniform as to the rule applicable to this form of impeachment, it is true, but in this state no doubt can well exist.

In *Long v. State*, 23 Neb., 34, the following language of

Judge Brewer in *Fisher v. Conway*, 21 Kansas, 25, was quoted with approval: "Impeaching testimony is for the purpose of discrediting a witness by showing that the community in which he lives do not believe what he says; that he is such a notorious liar that he is generally disbelieved. It is his present credibility that is to be attacked; is he now to be believed? What do his neighbors think and say of him at the present time; not what did they think and say months or years ago?"

In *Marion v. State*, 20 Neb., 242, it was held that the general reputation to be proved must be confined to a time very near the date when the witness testified. From the above statement as to the residence of Mr. Ayerst, it appears that of the two and one-half years which had elapsed since his residence in Sioux Falls ceased, he had resided one and one-half years in Omaha where the trial was then in progress. He certainly must have established a reputation for truthfulness or the contrary within that time, and proof of his reputation anterior, at least, to his residence in Omaha was too remote for the purpose of impeachment. The evidence offered for that purpose was, therefore, properly excluded. While some other propositions of fact were put in issue by the pleadings, none have been argued except such as have already received consideration and determination. The judgment of the district court is

AFFIRMED.

THE other commissioners concur.