Blanche CRISP, Petitioner,

v.

**SECURITY NATIONAL INSURANCE COMPANY, Respondent.**

No. A–9470.

Supreme Court of Texas.

June 26, 1963.

Rehearing Denied July 24, 1963.

R. S. Sutton, Amarillo, for petitioner.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for respondent.

CULVER, Justice.

The Security National Insurance Company issued its policy of fire insurance covering the household goods of the petitioner, Mrs. Crisp, in the total sum of $7,500.00. The goods were totally destroyed by fire and this suit was brought to recover for the loss.

Based on jury findings the trial court entered a judgment for Mrs. Crisp in the amount of $7,500.00. The Court of Civil Appeals has reversed and remanded for another trial. 364 S.W.2d 283.

The issue submitted to the jury is as follows:

"What amount of money, if any, do you find from a preponderance of the evidence, was the actual value to the

plaintiff at the time and place of its loss by fire, of the furniture, furnishings and personal belongings of the plaintiff."

The liability clause in the policy reads:

"Subject to Article 6.13 of the Texas Insurance Code, 1951, liability hereunder shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation; nor shall it exceed the amount it would cost to repair or replace the property with material of like kind and quality within a reasonable time after the loss, * * *."

The Court of Civil Appeals was of the opinion and so held that the case was tried on the wrong theory, namely, on that of an implied contract rather than on an express contract and that the correct measure of damage was not the actual value to the plaintiff of the property at the time and place of its loss, but the reasonable cost of replacing the property with material of like kind and quality, making allowance for depreciation.

We do not agree with this interpretation of the policy. The quoted clause constitutes only a limitation on the amount of recovery. It provides that the recovery shall not exceed the actual cash value of the property less depreciation nor exceed the cost of repair or replacement. It does not establish a contractual measure of damages to which the insured must be relegated.

Indemnity is the basis and foundation of insurance coverage not to exceed the amount of the policy, the objective being that the insured should neither reap economic gain nor incur a loss if adequately insured. Queen Ins. Co. v. Jefferson Ice Co., 64 Tex. 578; Monarch Fire Ins. Co. v. Redmon, Tex.Civ.App., 109 S.W.2d 177, no writ history; Finch v. Great American Ins. Co. et al., 101 Conn. 332, 125 A. 628, 38 A.L.R. 1068. As one early decision, Washington Mills Emery Mfg. Co. v. Weymouth & B. Mut. Fire Ins. Co., 135 Mass. 503, puts it:

"The contract of the insurer is not that, if the property is burned, he will pay its market value; but that he will indemnify the assured, that is, save him harmless or put him in as good a condition, so far as practicable, as he would have been in if no fire had occurred."

The trend of the decisions increasingly is that the measure of recovery for fire damage shall correspond to the actual loss sustained by the insured in view of all the circumstances in the case. Valuation of Property to Measure Fire Insurance Losses. 29 Col.Law Review 857, 859.

It is a matter of common knowledge and of usual acceptation by the courts that used household goods, clothing and personal effects have no market value in the ordinary meaning of that term. They may be sold but only at considerable sacrifice which by no means represents the value of the articles to the owner. We find no recognized authority which would hold the insured to a recovery based solely on the proceeds obtainable on a secondhand market. Likewise, replacement costs do not afford a fair test. In some instances on account of obsolescence, change in style and fashion, this measure might represent an economic gain to the insured quite aside from the difficulty of application and proof. The measure of damage that should be applied in case of destruction of this kind of property is the actual worth or value of the articles to the owner for use in the condition in which they were at the time of the fire excluding any fanciful or sentimental considerations. Boise Ass'n of Credit Men v. U. S. Fire Ins. Co., 44 Idaho 249, 256 P. 523; Sun Fire Office of London v. Ayerst, 37 Neb. 184, 55 N.W. 635; Northern Assurance Co., Ltd. v. Stewart, 228 Ala. 201, 153 So. 243. See Appleman, Insurance Law and Practice, Vol. 6, § 3825; Couch Cyclopedia of Insurance Law, Vol. 7, § 1840. We are in agreement with the

following statement from McAnarney v. Newark Fire Ins. Co., 247 N.Y. 176, 159 N.E. 902, 56 A.L.R. 1149:

" * * * The law of damages distinguishes between marketable chattels possessed for purposes of sale and chattels possessed for the comfort and well-being of their owner. In the instance of the former it judges their value by the market price. In the instance of the latter it measures their loss, not by their value in a second-hand market, but by the value of their use to the owner who suffers from their deprivation. The latter measure is employed in the case of household furniture, family records, wearing apparel, personal effects, and family portraits. Barker v. Lewis Storage & Transfer Co., 78 Conn. 198, 61 A. 363, 3 Ann.Cas. 889; Green v. Boston & Lowell R. Co., 128 Mass. 221, 35 Am. Rep. 370; Lake v. Dye, 232 N.Y. 209, at p. 214, 133 N.E. 448. * * *."

■ The courts have not abandoned the consideration of either market or reproduction or replacement values in arriving at actual value to the insured, but evidence of those values may be used as a guide in making that determination rather than a shackle which compels strict adherence thereto. The trier of facts may consider original cost and cost of replacement, the opinions upon value given by qualified witnesses, the gainful uses to which the property has been put as well as any other facts reasonably tending to shed light upon the subject. Pinet v. New Hampshire Fire Ins. Co., 100 N.H. 346, 126 A.2d 262, 61 A.L.R.2d 706.

Where property, such as household goods and wearing apparel, has no recognized market value, the actual value to the owner must be determined without resort to market value. Britven v. Occidental Ins. Co., 234 Iowa 682, 13 N.W.2d 791; Lampe Market Co. v. Alliance Ins. Co., 71 S.D. 120, 22 N.W.2d 427; Featherston v. Hartford Fire Ins. Co., D.C., 146 F.Supp. 535.

We have not found that this problem has been directly passed upon by this court but a number of our Courts of Civil Appeals have discussed the problem and on the whole may be said to be in agreement with the foregoing principles.

In Southern Nat. Ins. Co. v. Wood, 63 Tex.Civ.App. 319, 133 S.W. 286, no writ history, the facts were somewhat similar to those under consideration here. The insured was permitted to testify as to what the value of the destroyed property was to her. She was held entitled to recover not merely what she could have sold the goods for in the market, but rather what their cash value was to her. In that case there was no proof of a market for household goods nor any testimony as to the cost of replacement. In Fidelity & Guaranty Fire Corp. v. Ormand, Tex.Civ.App., 62 S.W.2d 675, writ dismissed, the court upheld the following Special Issue on damages:

"From a preponderance of the testimony, what pecuniary loss or damage, if any, do you find was caused to the household furniture, wearing apparel and personal property of the plaintiff by reason of the fire * * *?"

See also Niagara Fire Ins. Co. v. Pool, Tex.Civ.App., 31 S.W.2d 850, writ dismissed; Standard National Ins. Co. v. Bayless, Tex.Civ.App., 338 S.W.2d 313, writ refused, n. r. e.; Fire Ass'n of Philadelphia v. Coomer, Tex.Civ.App., 158 S.W.2d 355, no writ history; Monarch Fire Ins. Co. v. Redmon, supra; American General Ins. Co. v. Bell, Tex.Civ.App., 116 S.W.2d 877, no writ history.

■■ It has long been the rule generally in this state that to compensate for the loss of used household furniture and personal effects the measure of damages is the value of such goods to the owner, that is, the actual loss in money he has sustained by being deprived of articles which are especially adapted to the use of the individual and his family. International & G. N. Ry. Co. v. Nicholson, 61 Tex. 550; Wells Fargo

Express Co. v. Williams, Tex.Civ.App., 71 S.W. 314, writ refused. In fact some common carrier cases which announce this rule have cited and relied upon fire insurance decisions which apply the same measure of damages. See Wall v. Platt, 169 Mass. 398, 48 N.E. 270. We therefore hold that the trial court in the case here submitted a substantially correct guide for the jury's use in ascertaining and fixing the insurer's liability under the policy provisions.

The recovery in this case does not exceed the limitation of liability expressed in the policy. The company offered no evidence at all of the cost of replacement with materials of like kind and quality, nor any evidence bearing on the value of the goods at the time of the loss. The limitation that "liability herein shall not exceed the actual cash value of the property at the time of loss, ascertained with proper deduction for depreciation" may be construed as meaning the price of new property, as of the time of loss, of the same material and quality as the kind destroyed less the amount that the destroyed property would have depreciated over the period of time owned and used by the insured. In fact little distinction is to be made between the two limits of liability set out in the insurance contract. Fedas v. Insurance Co. of Pa., 300 Pa. 555, 151 A. 285; German Ins. Co. v. Everett, Tex.Civ.App., 36 S.W. 125.

■ The insurance company urges that there was no evidence of probative force to support the jury's finding of value. This proposition seems to be based partly upon the contention that there were certain items of property upon which testimony of value was entirely lacking. No particularization is furnished and from a review of the evidence we are of the opinion that there is no substantial merit to this claim. All of the testimony that appears in the record was offered by the insured. The company's local recording agent made an inspection of these goods before he issued the policy. He estimated at the time they were of good quality and worth the amount for which they were insured. He testified that Mrs. Crisp asked for a policy in the amount of $8,000.00, but that after an inspection of the property by him and a discussion with her he declined to write the policy for more than $7,500.00. Mrs. Crisp quoted the price and the date of purchase of various items of her property in the total sum of approximately $9,000.00. She testified that she had taken good care of these furnishings and they were worth as much to her as when they were new. A dealer who had sold her much of her furniture testified that the quality was of a high type. Another dealer had sold to her over a period of several years about $1800.00 worth of the best grade carpeting. Photographs of the damaged goods were in evidence The home consisted of living room, dining room, two bedrooms, a hall and a kitchen, all completely furnished with articles commonly to be found, such as two bedroom suites, divan, tables, breakfront, buffet, chairs, lamps, two radios, bric-a-brac, clocks, refrigerator, dishwasher, dishes, silverware, provisions, cooking utensils, clothing, all of which were destroyed. Admittedly, a good deal of this property had been owned for quite some time. But we are not concerned with market value and the jury could well determine that household furniture well cared for depreciates slowly so far as the use and value to the owner is concerned. Necessarily, proof of values of this kind of property is difficult and somewhat speculative, but in the state of the record before us at least we cannot say that there was no support for the jury's valuation.

■ On the trial it was stipulated that the insurer mailed notice of cancellation of this policy to the insured at her correct address some months before the fire. But she denied having received the notice. The Court of Civil Appeals correctly held that her testimony raised a fact issue which the jury decided in her favor. The policy provides that the company "may cancel this policy by giving the insured five days written notice." Unless the notice was received

by this insured the attempted cancellation was ineffective. Mrs. Crisp had given her promissory note payable in installments in the amount of the premium and admittedly had defaulted in the payment of those installments according to the terms of the note, but that fact alone would not serve to render unnecessary the giving by the company of written notice of cancellation.

As a counter proposition insurer contends that the trial court was in error in respect to the form in which the special issue was given to the jury on the question of notice of cancellation. It reads:

"Do you find from a preponderance of the evidence, if any, that the written notice of cancellation, if any, was received by plaintiff five days prior to November 18, 1959?"

■ It was stipulated that the notice of cancellation was mailed at Amarillo, Texas, to Mrs. Crisp at her correct address in Amarillo, Texas, on June 10, 1959. In the normal course the notice should have been delivered on the following day. The issue inquires whether or not the notice was received by the insured five days prior to the date of the fire, November 18, 1959, or in other words on November 13th. The issue, if construed literally, places an impossible burden on the insurer. It was almost beyond the realm of possibility that a letter mailed on June 10th to an address in the same city would not be received until some five months later. The issue obviously is erroneous. It should have read "at least" five days prior to November 18th. However, there is nothing to show that the jury took the issue so literally and considered that they were limited to determining whether or not Mrs. Crisp actually received the notice on November 13th even though they should have believed that she had received it at some time prior thereto. The judge surely did not think the issue was so restricted. The testimony of Mrs. Crisp was that she never did receive the notice at any time. Argument of counsel is not be-

fore us and we may assume that if counsel for Mrs. Crisp so strictly construed this issue in his argument to the jury, an objection would have been made and the ruling of the court preserved. In our opinion the error was therefore harmless.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.