**Stewart James MEW et al., Appellants,**

**v.**

**J & C GALLERIES, INC., Appellee.**

**No. 19194.**

Court of Civil Appeals of Texas, Dallas.

June 30, 1977.

James E. Ross, Charles W. Kelly, Ross, Griggs & Harrison, Houston, for appellants.

William M. Jones, Dallas, for appellee.

AKIN, Justice.

This is a suit on an insurance policy to recover for losses suffered by plaintiff, J & C Galleries, in a burglary. The risk was insured by certain underwriters at Lloyds of London. After trial to the court, judgment was rendered in favor of plaintiff, and the underwriters appeal. We hold that there was evidence to support the trial court's judgment and, accordingly, affirm.

J & C Galleries is a corporation formed by Roy Jenkins and Larry Cress for the purpose of dealing in jewelry, antiques, and objects of art. The parties intended to conduct auctions at various locations around the country; there was no business office as such. Jenkins and Cress made purchases at various locations around the country and, upon returning to Dallas, would record their purchases in a book kept for this purpose. They also recorded the wholesale value assigned to items contributed to the corporation by Jenkins and Cress. Their accountant, Michael Hurst, suggested that a computerized inventory would be preferable considering the large number of items in inventory and the nature of the business. Thus, the accountant arranged with an independent computer company to transfer these records from the book to a computer. Hurst reviewed the initial printout and made corrections to insure that it accurately reflected the entries in the record book. Subsequent acquisitions were recorded on the computer. After an auction, the goods sold were recorded and a computer printout of the then current inventory was obtained. After the robbery, Cress took an inventory of the remaining items and a list of the missing items was then entered in the computer. These missing items which had not been sold or traded are the basis of this claim. The question on this appeal is whether there is any competent evidence to support the trial court's judgment in favor of J & C Galleries.

In support of its claim, plaintiff introduced several computer records. Exhibit 6 is a post-robbery computer printout which lists each item and indicates whether it was still on hand or had been sold or stolen. Exhibit 5 is a simplified version of exhibit 6 limited to those items stolen. Exhibit 7 is, according to Hurst, a hand-written recapitulation of exhibit 6 in somewhat simpler form. When plaintiff's counsel tendered exhibits 2 through 7, defendants' counsel requested an opportunity to examine Hurst on voir dire, which was granted. After voir dire was completed, the court permitted a short recess to allow counsel for defendants an opportunity to review these exhibits. Following the recess, defendants' counsel stated that he had no objection to exhibits 2 through 7. However, defendants now assert that exhibits 5, 6, and 7, which constitute the only evidence of the value of the stolen property are hearsay and cannot be considered in support of the trial court's judgment. For this proposition, they cite

the rule that hearsay, even when admitted without objection, cannot support a judgment unless it falls within an exception. *Knapik v. Edison Bros., Inc.*, 313 S.W.2d 335, 337 (Tex.Civ.App.—Waco, 1958, writ ref'd); *Ray v. Shafer*, 519 S.W.2d 525, 526 (Tex.Civ.App.—Fort Worth 1975, no writ). The contention that the computer printouts are hearsay is based on asserted failure of plaintiff to show that the printouts satisfied the prerequisites of Tex.Rev.Civ.Stat.Ann. art. 3737e (Vernon Supp.1976), the business records exception to the hearsay rule.

We conclude that defendants have waived any complaint based on lack of the predicate required by article 3737e. To allow defendants' counsel to state specifically that he has no objection to the admission of these exhibits and then later complain of plaintiff's failure to lay a proper predicate would permit a party to benefit from error for which his counsel is, in part, responsible due to his affirmative acts. *Cf. Cherry v. State*, 546 S.W.2d 922, 923 (Tex.Civ.App.—Dallas 1977, writ ref'd) (a party cannot complain of responsive answers to a question which he propounds). Counsel's statement that he had no objection to the admission of the exhibits is, in effect, an agreement that the proper predicate can be laid and that further proof of the predicate need not be presented. *Loper v. Andrews*, 395 S.W.2d 873, 875 (Tex.Civ.App.—Waco 1965), *aff'd on other grounds*, 404 S.W.2d 300 (Tex.1966); *Missouri Pacific Railroad v. Watson*, 346 S.W.2d 640, 641 (Tex.Civ.App.—San Antonio 1961, writ ref'd n. r. e.) (per Pope, J.); *see Buchanan v. American Nat'l Ins. Co.*, 446 S.W.2d 384, 387 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.). The rationale of this rule is that after lodging such an objection, withdrawal of the objection after reviewing the exhibits is tantamount to a stipulation that they comply with article 3737e and thus are admissible. To hold otherwise would lull the proponent of the exhibits into believing that no fur-

ther predicate was necessary even though he could lay predicate in compliance with this statute. Under these circumstances, we hold that the defendants cannot now complain that these exhibits are hearsay.

The underwriters next contend that there is no evidence which shows the "actual cash value" of the stolen goods, which is the standard prescribed by the insurance policy.[1] They argue that "actual cash value" is equivalent to market value and that this requires evidence of the price at which the insured could sell the property at the time and place it was stolen. Since the purchases occurred at various times and places other than Dallas, the underwriters conclude that the purchase prices are not evidence of the proper measure of damages. We cannot agree. The supreme court has taken a less restrictive view than that urged by defendants. In *Crisp v. Security Nat'l Ins. Co.*, 369 S.W.2d 326, 329 (Tex. 1963), the court said:

> The courts have not abandoned the consideration of either market or reproduction or replacement values in arriving at actual value to the insured, but evidence of those values may be used as a guide in making that determination rather than a shackle which compels strict adherence thereto. The trier of facts may consider original cost and cost of replacement, the opinions upon value given by qualified witnesses, the gainful uses to which the property has been put as well as any other facts reasonably tending to shed light upon the subject.

Thus, the supreme court regards market value as only one factor to be considered in arriving at actual cash value, rather than construing the two terms as equivalent. The purchase price of an item is generally determined at a point in time before the loss and often in a different location. Clearly, authority to consider purchase price in determining actual cash value would be

---

1. We note that the supreme court has held that "actual cash value" is a limitation on the insurer's liability, not a contractual measure of damages. The proper measure of damages is the actual loss sustained by the insured. *Crisp v.* *Security Nat'l Ins. Co.*, 369 S.W.2d 326, 328 (Tex.1963). However, since no complaint is made on this point, we will treat the two terms as equivalent for the purposes of this opinion.

virtually meaningless if restricted to purchases occurring at the time and in the place where the loss occurred.

The underwriters attempt to distinguish the holding in *Crisp* on the basis that it permits consideration of the purchase price as evidence of cash value only in cases concerning loss of "chattels possessed for the comfort and well-being of their owner" as opposed to "marketable chattels possessed for purposes of sale." *Id.*, 369 S.W.2d at 329. We cannot, however, agree with this reading of *Crisp*. The supreme court stated the rule that any evidence reasonably tending to show actual cash value, including the purchase price, could be considered; the court then went on to say that since there is no market value for certain property, such as household goods and clothing, their actual cash value would have to be determined without reference to market value. *Id.* As we read *Crisp*, the various factors set out above, including but not limited to market value, may be considered in ascertaining the actual cash value of any lost property, with the exception that where there is no recognized market value, market value should be excluded and the determination based on the remaining factors. We conclude, therefore, that the evidence of the purchase price was properly considered by the trial court.

Neither do we consider controlling *Hanover Fire Ins. Co. v. Bock Jewelry Co.*, 435 S.W.2d 909, 919 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.), cited by the underwriters. That case held that evidence of the cost of stolen property and an opinion as to their actual cash value, which opinion did not purport to be restricted to actual cash value as of the date of theft and in the city where the theft occurred, would not support a summary judgment against the insurance company. The *Bock* court's statement that actual cash value should be shown as of the time and place of loss is predicated upon its statement that actual cash value is the market value of the insured property; however, the supreme court's holding in *Crisp* that market value is but a factor to be used in arriving at actual

cash value establishes that these terms do not always have the same meaning. The evidence presented concerning the purchase price need not be restricted to the value as of the time and place of loss, as is true in determining market value. Indeed, the *Bock* court goes on to note that the evidence presented, if it could be considered, did no more than raise a fact question with respect to actual cash value. Similarly, we hold that the evidence before us was sufficient to raise a fact question, which the trial court resolved in favor of J & C Galleries.

The underwriters also challenge, in addition to J & C's purchases, some of the inventory which was contributed by Jenkins and Cress, apparently in return for stock in the corporation. With respect to this contributed inventory, Jenkins and Cress agreed on a wholesale value for each item, which value was recorded in the record book. Although the details of this arrangement were not developed at trial, there is some evidence that the contribution of these items was essentially a sale to the corporation. Since nothing in the record indicates that they were not bona fide transactions or that the values assigned to each item were not set in good faith before the loss in question, we conclude that the assigned value is some evidence of the value of these particular stolen items. *Pinet v. New Hampshire Fire Ins. Co.*, 100 N.H. 346, 126 A.2d 262, 266 (1956), *cited with approval, Crisp v. Security Nat'l Ins. Co.*, 369 S.W.2d 326, 329 (Tex.1963).

The underwriters next argue that the probative value of the wholesale prices paid was destroyed by the testimony regarding the auction held in Dallas. They reason that since J & C Galleries anticipated a sale of $20,000 to $25,000, but only sold between $5,000 to $7,000, the wholesale prices paid by J & C Galleries were grossly inflated and not indicative of their market values in Dallas. They conclude that the property was sold at prices below that projected. We do not, however, regard this evidence as negating the probative value of the wholesale prices paid because the testimony indi-

cates that it was the volume which disappointed plaintiff's expectations concerning the sale, not the prices paid for the goods actually sold. Indeed, the testimony reflects that a profit was realized on those items actually sold. Additionally, the failure of the sale is merely evidence which the trial court was entitled to take into consideration in its decision; it does not destroy the probative force of other evidence. As noted *supra*, the market value in Dallas as of the date of loss is not the sole criterion that may be considered. Since the underwriters have raised only a "no evidence" point, we must consider the evidence in the light most favorable to the finding and disregard contrary evidence. *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 777 (Tex. 1974). Applying this standard, we hold that there was evidence to support the trial court's finding.

The underwriters also assert that some of the items for which recovery is sought are clearly not covered by the policy, which covers only jewelry and antiques, but not necessarily objects of art. In this regard they contend that the description of certain items clearly shows that they are not jewelry and that since there is no evidence that they are antiques, these items are not covered by the policy. The challenged items include watches, bolos, belts, belt buckles, and dolls. At trial, Jenkins admitted that the dolls were not jewelry or antiques; however, the value of the disputed dolls is but $6.75. The only other disputed item which was mentioned at trial were the buckles, which Jenkins contends are Indian jewelry. Since there is evidence that the buckles were Indian jewelry, we conclude that the trial court resolved this fact question in favor of the insured. We modify, however, the trial court's judgment by reducing it to the extent of the value of the dolls ($6.75) and, as so modified, affirm the judgment.

ROBERTSON, J., not participating.