Affirmed as Modified and Memorandum Opinion filed August 4, 2009








Affirmed as Modified and Memorandum Opinion filed
August 4, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00081-CV

_______________

 

DANNY LANGHORNE, Appellant

 

V.

 

KAY M. MILLER, Appellee

                                                                                                                                               


On Appeal from the County Civil Court
at Law No. 3

Harris County, Texas

Trial Court Cause No. 851439

                                                                                                                                               


 

M E M O R A N D U M   O P I N I O N

 








In this
case involving storage of, and refusal to return, three aircraft, appellant,
Danny Langhorne, challenges the trial court=s (1) findings in favor of appellee,
Kay M. Miller, on her claim of conversion, (2) award of conversion damages to
Miller, and (3) take-nothing judgment against Langhorne on his claim for
quantum meruit.  We modify the judgment to order that Miller recover nothing on
her claim for conversion of one of the aircraft, modify the total award of
damages and prejudgment interest accordingly, and affirm the judgment as
modified.[1]

I.  Factual and Procedural Background

In 1996,
Miller was involved in a hostile divorce from Bufort Peters.  Langhorne had 
known Peters for ten to fifteen years, and Peters was one of Langhorne=s closest friends.  According to
Langhorne, Peters brought Langhorne three aircraft in the summer of 1996.  The
aircraft were Abasket cases,@ meaning the planes were missing parts and were not flyable. 
Langhorne and Peters orally agreed Langhorne would store the planes, and A[i]n lieu of money, [Peters] would do
annuals on [Langhorne=s] aircraft.@  Peters died in November 1996, before the Miller-Peters
divorce could become final.  In December 1996, Langhorne appeared in probate
court as a witness to the signing of Peters=s will.  

In June
2001, the probate court rendered an agreed final judgment between Miller and
the independent administrator of Peters=s estate.  Under the judgment, Miller
was awarded  title to four aircraft, including a Taylorcraft (L-2) DCO-65, a
Fairchild 24R-46, and a Piper J3-C-65 Cub, all originally manufactured between
1944 and 1946.  The court also ordered that each party would assume and pay any
debt owed on the aircraft awarded it, and the parties represented the only
indebtedness on the planes awarded to Miller was a Northwest Bank lien on the
Piper.








Someone
had told Miller that Langhorne might have the Taylorcraft, Fairchild, and Piper
so; in June or July 2001, Miller went to Langhorne=s hangar to claim the three planes. 
According to Langhorne, he told Miller she would have to pay to get the planes.[2] 
According to Miller, Langhorne was rude, denied he had the planes, and said
nothing about a fee.  Langhorne admitted he had participated in filing criminal
trespass charges against Miller.

In June
2005, Miller received a letter from Langhorne=s attorney demanding payment. 
According to Miller, that was the first time she knew where the planes were. 
In November 2005, Langhorne sued Miller for breach of contract.  He subsequently
amended his petition to include a claim for quantum meruit.  Miller
counterclaimed for conversion.

Trial
was to the court.  Langhorne abandoned his breach-of-contract claim and
proceeded only on his claim for quantum meruit.

The
trial court rendered judgment that Langhorne take nothing on his quantum meruit
claim.  The court found in favor of Miller on her conversion claim and awarded
her $3,000 for conversion of the Piper, $8,000 for conversion of the Fairchild,
and $30,000 for conversion of the Taylorcraft, plus pre-judgment interest of
$11,603.56 and post-judgment interest at the rate of 8.25 percent from the date
of judgment until paid.  Langhorne filed a motion for new trial, and the trial
court filed findings of fact and conclusions of law.  Langhorne=s motion for new trial was overruled
by operation of law.

II.  Standard of Review

In three
issues, Langhorne argues the evidence was legally insufficient to support the
trial court=s findings (1) in favor of Miller on her conversion claim, (2) on the
amount of conversion damages, and (3) against Langhorne on his quantum meruit
claim.[3]  He requests
this court to render judgment that Miller take nothing and that he recover
unpaid storage fees and attorney=s fees.








In
reviewing a trial court=s findings for legal sufficiency of the evidence, we apply
the same standards we apply in reviewing evidence supporting a jury=s answer.  Catalina v. Blasdel,
881 S.W.2d 295, 297 (Tex. 1994).  Findings of fact in a bench trial
have the same force and dignity as a jury=s verdict on jury questions.   Arrellano
v. State Farm Fire & Cas. Co., 191 S.W.3d 852, 855B56 (Tex. App.CHouston [14th Dist.] 2006, no pet.). 
However, the trial court=s findings are not conclusive when, as here, there is a
complete reporter=s record.  Id. at 856.

When
reviewing legal sufficiency of the evidence, we review the evidence in the
light most favorable to the challenged finding and indulge every reasonable
inference that would support it.  City of Keller v. Wilson, 168 S.W.3d
802, 822 (Tex. 2005).  We credit favorable evidence if a reasonable fact finder
could, and we disregard contrary evidence unless a reasonable fact finder could
not.  Id. at 827.  The evidence is legally sufficient if it would enable
fair-minded people to reach the finding under review.  Id.

We will
sustain a no‑evidence point only when (1) the record discloses a complete
absence of evidence of a vital fact, (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (4) the evidence establishes conclusively the opposite of the
vital fact.  See Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex.
2003).  An appellant attacking the legal sufficiency of evidence supporting an
adverse finding on which he had the burden of proof must show on appeal that a
contrary finding was established as a matter of law.  See Croucher v.
Croucher, 660 S.W.2d 55, 58 (Tex. 1983). 

III.  Discussion

A.  Issue One:
Finding in Favor of Miller on Conversion








In issue
one, Langhorne argues the trial court erred in awarding any conversion damages
to Miller.  To establish her claim for conversion, Miller had to prove (1) she
owned, had legal possession of, or was entitled to, possession of the
aircraft,  (2) Langhorne assumed and exercised dominion and control over the
aircraft in an unlawful and unauthorized manner, to the exclusion of and
inconsistent with Miller=s rights,  and (3) Langhorne refused Miller=s demand for return of the aircraft. 
See Hunt v. Baldwin, 68 S.W.3d 117, 131 (Tex. App.CHouston [14th Dist.] 2001, no pet.).

Langhorne
argues there is no evidence of the second element because he had a valid
aircraft repair and maintenance lien under Texas Property Code sections 70.301
and 70.302.  Section 70.301 provides:

(a) A person who stores, fuels, repairs, or performs maintenance work
on an aircraft has a lien on the aircraft for:

(1) the amount due under a contract for the storage, fuel, repairs, or
maintenance work;  or

(2) if no amount is specified by contract, the reasonable and usual
compensation for the storage, fuel, repairs, or maintenance work.

(b) This subchapter applies to a contract for storage only if it is:

(1) written;  or

(2) oral and provides for a storage period of at least 30 days.

 

Tex. Prop. Code Ann. ' 70.301 (Vernon 2007).[4]

Section
70.302 further provides:

(a) A holder of a lien under this subchapter may retain possession of
the aircraft subject to the lien until the amount due is paid.








(b) Except as provided by Subsection (c), if the holder of a lien under
this subchapter relinquishes possession of the aircraft before the amount due
is paid, the person may retake possession of the aircraft as provided by
Section 9.609, Business & Commerce Code.

(c) The holder of a lien under this subchapter may not retake
possession of the aircraft from a bona fide purchaser for value who purchases
the aircraft without knowledge of the lien before the date the lien is recorded
under Section 70.303.

 

Id. ' 70.302.

To bring
his situation under the provisions of sections 70.301 and 70.302, Langhorne
relies on an oral agreement with Peters, made five to six months before Peters=s death, to store Peters=s aircraft.  There was evidence,
however, showing (1) Langhorne=s oral agreement with Peters was storage in exchange, not for
a fee, but for Peters=s performing Aannuals@ on Langhorne=s aircraft, (2) Langhorne, despite appearing at the probate
proceedings, never filed a claim against Peters=s estate, (3) the parties to the
agreed final judgment in the probate proceedings represented that the only
indebtedness on the aircraft was a Northwest Bank lien, (4) Langhorne had no
agreement with Miller to store the aircraft, (5) Langhorne made no attempt to
collect the purported fees between sometime in 2000 and June 2005, (6) Miller
received no invoices from Langhorne, and (7) if Langhorne did send invoices, he
sent them to an address other than the one shown on the planes= FAA registrations.








There
was also Miller=s testimony that, in June or July 2001, shortly after entry
of the agreed final judgment, Langhorne denied having the aircraft.  If
Langhorne had relinquished possession of the aircraft during that period of
time, and therefore was telling Miller the truth, he would have had to have
regained possession under the procedure set forth in Property Code section
70.302(b) and the Business & Commerce Code to be lawfully in possession of
the aircraft.  See Tex. Prop. Code Ann.
' 70.302(b).  If, however, Langhorne
in fact had possession of the aircraft when he spoke with Miller, then
Langhorne lied to Miller.[5]  Either
interpretation, along with the other evidence set forth above, supports a
finding that Langhorne assumed and exercised dominion and control over the
aircraft in an unlawful and unauthorized manner to the exclusion of, and
inconsistent with, Miller=s rights.  See Hunt, 68 S.W.3d at 131.

The
evidence was legally sufficient to support the trial court=s finding in favor of Miller on her
conversion claim.  Accordingly, we overrule Langhorne=s first issue.

B.  Issue Two:
Findings on Conversion Damages

In issue
two, Langhorne argues the conversion damages should be reduced to zero because
there is no evidence to support the trial court=s findings of $3,000 for conversion
of Piper, $8,000 for conversion of the Fairchild, and $30,000 for conversion of
the Taylorcraft.  Langhorne contends the damages evidence was incompetent,
speculative, and not based on fair market value.  Miller relies on her own
testimony and on documentary evidence introduced by Langhorne.








A
plaintiff must prove damages before a court may allow recovery for conversion. 
United Mobile Networks, L.P. v. Deaton, 939 S.W.2d 146, 147 (Tex.
1997).  The usual measure of damages for conversion is the fair market value of
the property at the time and place of conversion.  See id. at 147B48.  When converted property has no
readily ascertainable fair market value, however, the measure of damages is the
actual value of the property to the owner at the time of its loss.  Burns v.
Rochon, 190 S.W.3d 263, 270 (Tex. App.CHouston [1st Dist.] 2006, no pet.)
(citing Crisp v. Sec. Nat=l Ins. Co., 369 S.W.2d 326 (Tex. 1963)).[6] 
Damages are limited to the amount necessary to compensate the plaintiff for the
actual losses or injuries sustained as a natural and proximate result of the
defendant=s conversion.  Deaton, 939 S.W.2d at 148.  A conversion should not
unjustly enrich the wrongdoer or the complaining party.  Id.

In sum,
no absolutely rigid rule applies to every state of facts in conversion cases.  Minter
v. Sparks, 246 S.W.2d 954, 957 (Tex. Civ. App.CDallas 1951, writ ref=d n.r.e.).  Instead, the appropriate
result is compensation for the injury.  Id.  

ANo matter what measure of damages is employed in establishing
the value of the converted property, >it is well settled that the owner of
property can testify as to his opinion regarding the value of his own property
. . . even if the owner=s testimony is halting and indefinite it nonetheless will be
sufficient to sustain a verdict when there is no controverting evidence.=@  Burns, 190 S.W.3d at 270B71 (quoting Espinosa v. Schomberg,
601 S.W.2d 161, 164 (Tex. Civ. App.CWaco 1980, writ ref=d n.r.e.)).  

In the
present case, Miller testified that, in 1996, she and Peters had their business
and home in an airplane hangar.  The airplanes in question had been at Miller=s hangar/residence.  Both Miller and
Peters were involved in the restoration of aircraft.  At one point, Peters was
working at NASA, and Miller was doing all of the restoring at the hangar. 
Miller testified that, as an owner and operator of the three airplanes, she was
familiar with their history.  Miller opined the Piper was worth $30,000; the
Fairchild, around $20,000; and the Taylorcraft, $30,000 to $35,000.








Miller
nevertheless admitted she had no knowledge of the condition of the planes when
they arrived at Langhorne=s hangar in 1996.  Thus, even though it is the testimony of
an owner, Miller=s testimony by itself is no evidence of the condition or
value of the planes at the time of conversion, i.e., when Langhorne
subsequently refused to return them in 2001.  See Varel Mfg. Co. v.
Acetylene Oxygen Co., 990 S.W.2d 486, 499 (Tex. App.CCorpus Christi 1999, no pet.)
(holding appellant prevailed on no evidence point when appellee=s witness=s testimony showed value he placed on
converted property at time of trial was higher than its value in 1995, when
conversion occurred, and accordingly there was no evidence of market value at
time of conversion). 

Langhorne,
however, introduced into evidence a document Miller signed close to the time
Peters took the planes to Langhorne.  In that document, Miller and Peters
valued the Piper at $3,000 and the Fairchild at $8,000.[7]

Langhorne
also testified he was not aware of any decay or vandalism, and was aware of
only a little deterioration due to the passage of time.  Thus, it is reasonable
to infer that, when Miller was denied possession of the Piper and the Fairchild
in June or July of 2001, the aircraft would have had the same values as they
had when Peters took them to Langhorne=s hangar in 1996, those values being
$3,000 and $8,000, respectively, as evidenced by the contemporaneous document. 
Langhorne=s own evidence therefore supports the trial court=s findings of damages of $3,000 and
$8,000, respectively, for conversion of the Piper and the Fairchild.








In
contrast, the only evidence supporting a value of $30,000 for the Taylorcraft
is Miller=s testimony.[8]  As discussed
above, Miller had no knowledge of the Taylorcraft=s condition when it arrived at
Langhorne=s hangar and her testimony therefore does not support an inference of its
subsequent value at the time of conversion.[9]

For the
foregoing reasons, we overrule Langhorne=s second issue as it relates to the
award of damages for the Fairchild and the Piper, but sustain his second issue
as it relates to the award of damages for the Taylorcraft.  We therefore modify
the judgment to order that Miller recover nothing in damages for conversion of
the Taylorcraft, and we adjust the damages and prejudgment interest
accordingly.

C.  Issue Three:  Quantum Meruit

In issue
three, Langhorne argues the trial court Aerred in its decision that
[Langhorne] take nothing against [Miller] on his claim of quantum meruit
asserted against [Miller].@  To prove quantum meruit against Miller, Langhorne had to
show (1) he rendered valuable services or furnished materials;  (2) for
Miller;  (3) which services and materials Miller accepted, used, and enjoyed; 
(4) under such circumstances as reasonably notified Miller that Langhorne, in
performing such services, was expecting Miller to pay him.  See Wohlfahrt v.
Holloway, 172 S.W.3d 630, 634 (Tex. App.CHouston [14th Dist.] 2005, pet.
denied).  








Langhorne=s claim fails for several reasons. 
First, Langhorne=s oral agreement was with Peters, not Miller.[10] 
Second, the existence of Langhorne=s express contract with Peters for
the same services for which he now seeks reimbursement from Miller defeats his
claim against Miller for quantum meruit.  See Econ. Forms Corp. v. Williams
Bros. Constr.  Co., 754 S.W.2d 451, 458 (Tex. App.CHouston [14th Dist.] 1988, no writ).[11] 
Third, the trial court found that, no later than July 31, 2001, a date shortly
after the probate court awarded Miller the aircraft, Langhorne denied having
them.  Finally, the trial court found Miller did not know Langhorne had
possession of her planes or expected compensation for their storage until on or
after June 13, 2005, i.e., when Langhorne=s attorney sent the demand letter.

The
evidence was legally insufficient to establish Langhorne=s quantum meruit claim against
Miller.  The trial court correctly rendered a take-nothing judgment against
him.  Accordingly, we overrule Langhorne=s third issue.

IV.  Conclusion

Having sustained Langhorne=s second issue as it relates to damages awarded to
Miller for conversion of the Taylorcraft airplane, we modify the judgment to
order that Miller recover nothing on her claim for conversion of the Taylorcraft,
reduce the total amount of damages to $11,000, and reduce the  award of
prejudgment interest to $3,113.15.  Having  found no error in the remainder of
the judgment and having overruled Langhorne=s
remaining issues, we affirm the judgment as modified.

 

 

 

 

/s/        Charles W. Seymore

Justice

 

 

Panel
consists of Justices Seymore, Brown, and Sullivan.









[1]  Because all dispositive issues of law are settled,
we issue this memorandum opinion.  See Tex. R. App. P. 47.4.





[2]  Langhorne also claimed that, starting in September
1996, he sent monthly invoices to Miller at a Hockley Post Office address.  He
did not have copies of the invoices, the last one of which he purportedly sent
sometime in 2000.





[3]  Langhorne briefly sets forth the standard of review
for factual sufficiency, but he frames his arguments as no evidence or legal
insufficiency points and requests only rendition, rather than remand.  See 
Horrocks v. Tex. Dept. of Transp., 852 S.W.2d 498, 499 (Tex. 1993) (per
curiam) (AOrdinarily, an appellate court should render judgment
after sustaining a complaint as to the legal sufficiency of the evidence.@).  Accordingly, we interpret Langhorne as arguing the
evidence was legally insufficient, rather than legally and factually
insufficient.





[4]  Citation is to the current statutes.  During the
pendency of the events underlying this case, the legislature amended sections
70.301 and 70.302 by adding provisions not relevant to the disposition of this
case.  See Act of May 25, 2001, 77th Leg., R.S., ch. 1171 ' 1, 2001 Tex. Gen. Laws 2637, 2637 (amending section
70.301); Act of May 17, 1999, 76 Leg., R.S., ch. 414, '' 2.41, 3.01, 1999 Tex. Gen. Laws 2639, 2746, 2747
(amending section 70.302, effective July 1, 2001).





[5]  The trial court found Langhorne Adenied directly to Kay Miller that he had possession
of the planes . . . on a date no later than July 21, 2001 . . . .@  Langhorne does not dispute this finding.





[6]  AFair market
value@ is the price the property would bring when offered
for sale by one who desires, but is not obliged to sell, and bought by one who
is under no necessity of buying it.  City of Austin v. Cannizzo, 153
Tex. 324, 267 S.W.2d 808, 815 (1954).  AActual
value@ applies to goods possessed for the owner=s comfort and well‑being, rather than for
resale.  See Crisp v. Sec. Nat=l Ins. Co., 369 S.W.2d 326,
329 (Tex. 1963).  AThe measure of damages that should be applied for loss
of this kind of property is actual value of the articles to the owner in the
condition they were in at the time of the loss, without resort to market value,
and excluding any fanciful or sentimental considerations.@  Wright v. Gernandt, 559 S.W.2d 864, 870 (Tex.
Civ. App.CCorpus Christi 1977, no writ) (citing Crisp,
369 S.W.2d at 328B29)).





[7]  Miller testified she signed the document while she
and Peters were separated and in the process of divorcing.  The valuations
would therefore have been generated close to the time Peters took the planes to
Langhorne=s hangar.

 

The document was admitted into evidence as
Plaintiff=s Exhibit 10, but it is not part of the record on
appeal.  We therefore cannot consider the document itself even though Miller
has included it in the appendix to her brief.  See Cherqui v. Westheimer St.
Festival Corp., 116 S.W.3d 337, 342 n.2 (Tex. App.CHouston [14th Dist.] 2003, no pet.) (A[W]e cannot consider documents attached as appendices
to briefs and must consider a case based upon the record filed.@).  Accordingly, we have relied only on  testimony
about the document.





[8]  Miller asks this court to consider her verified
pleadings as evidence.  We decline to do so.  See Love v. State Bar of Tex.,
982 S.W.2d 939, 943 (Tex. App.CHouston [1st
Dist.] 1998, no pet.)  (APleadings, even those that are verified, are not
evidence of the truth of their allegations.@).





[9]  Miller testified she was flying Athe L-4@
shortly before Peters took the planes to Langhorne.  From the descriptions in
the agreed final judgment in the divorce, however, the L-4 would be the Piper,
and not the Taylorcraft.





[10]  It is undisputed Langhorne did not file a claim
against Peters=s estate.  There is also no indication he sued the
independent administrator of the estate.





[11]  Langhorne does not argue Miller was a third party
beneficiary to his contract with Peters.