**UNITED STATES FIRE INSURANCE COMPANY, Appellant,**

v.

**T. C. STRICKLIN, Appellee.**

No. 19165.

Court of Civil Appeals of Texas, Dallas.

Sept. 9, 1977.

Rehearing Denied Oct. 6, 1977.

See also, Tex.Civ.App., 547 S.W.2d 338.

 

Larry L. Gollaher, Thompson, Coe, Cousins & Irons, Dallas, for appellant.

Corbet F. Bryant, Jr., Robert H. Mow, Jr., Carrington, Coleman, Sloman, Johnson & Blumenthal, Dallas, for appellee.

AKIN, Justice.

This is a suit on a fire insurance policy by T. C. Stricklin, a third-lien mortgagee, against U.S. Fire Insurance Company. The property damaged was covered on the date of loss by two separate policies similar in terms, and Stricklin has sued each insurance company for the loss in separate actions. Prior to suit, Stricklin foreclosed upon the property and repaired it. The principal question on this appeal is whether the trial court erred in refusing to admit evidence of the second fire insurance policy covering the property and in failing to give effect to the "other insurance" clause contained in the U.S. Fire policy. U.S. Fire also contends that the trial court erred: (1) in overruling its plea in abatement asserting that a necessary party, the first-lien mortgagee, was not a party; (2) in refusing to consolidate this case with Stricklin's action against the other insurer, Houston General Fire' Insurance Co.; (3) in admitting into evidence a summary of the damages; and (4) in submitting, over objection, improper damage issue instructions.

We reverse and remand because the trial court erred (1) in refusing to give effect to the "other insurance" proration clause, (2) in submitting jury issues with instructions that failed to restrict the jury to values before and after the fire, and (3) in admitting the summary without a showing that the underlying documents were admissible. Finally, we hold that the trial court did not abuse its discretion in refusing to consolidate the two cases.

### "Other Insurance" Clause

U.S. Fire argues that the trial court erred in refusing to admit into evidence the Houston General policy and to give effect to the pro rata "other insurance" clause of the U.S. Fire policy by prorating the loss between U.S. Fire and Houston General. In this respect, U.S. Fire asserts that the trial court erred in failing to admit testimony

that plaintiff Stricklin had knowledge of the Houston General policy before the fire loss and had sued Houston General for the same loss. Essentially, U.S. Fire is contending that the Houston General policy falls within the "other insurance" provision of the U.S. Fire policy and, therefore, the loss should be prorated between the two companies.

Stricklin, on the other hand, asserts that the Houston General policy is not "other insurance" with respect to him and, consequently, insists upon recovering against U.S. Fire the total amount of his loss and then assigning his rights on the Houston General policy to U.S. Fire. In support of this contention; Stricklin urges that he is named in the U.S. Fire policy as a third-lien mortgagee-payee, but is not named in the Houston General policy. His claim on the Houston General policy is based on his equitable right to the proceeds. In response, U.S. Fire points out that Stricklin's position is the same under both policies because of an assignment to him of the second-lien mortgagee's rights under both policies, and, thus, the distinction urged by Stricklin is nonexistent.

 We agree with U.S. Fire and hold that the trial court erred in failing to give effect to the "other insurance" clause and in refusing to prorate the loss between the insurers. The policy provides:

This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved whether collectible or not.

In addition to the above-quoted pro rata liability clause, the policy sued upon also contains an "other insurance" provision which states:

1. Loss by fire or other perils not provided for in 2. below: *If at the time of the loss, there is other insurance available to the insured* or any other interested party covering such loss or *which would have covered such loss except for the existence of this insurance*, then *the Company shall be liable* as follows:

a. If such insurance is Contributing Insurance, defined as any insurance written in the name of the insured, upon the same plan, terms, conditions and provisions as contained in this policy whether collectible or not, the Company shall be liable for no greater proportion of any loss than the limit of liability under this policy bears to the whole amount of insurance covering such property.

Similar language is contained in the Houston General policy. It is settled that pro rata liability insurance clauses are valid. In *Traders & General Ins. Co. v. Hicks Rubber Co.*, 140 Tex. 586, 169 S.W.2d 142, 147 (1943), the court held such a provision to be enforceable, absent a statute to the contrary. The supreme court concluded that an insured was not permitted to recover more than a pro rata amount from each insurer. *Employers Casualty Co. v. Transport Co.*, 444 S.W.2d 606, 609 (Tex.1969); *see Liverpool & London & Glove Ins. Co. v. Delta County Farmers' Ass'n*, 56 Tex.Civ. App. 588, 121 S.W. 599 (1909, writ ref'd). The rule is that if two or more insurers contract to pay a portion of a loss, each is liable only to the extent that the amount insured by such insurer bears to the total loss and that none of the insurers has any right of contribution from the other insurers because the contracts are several, rather than joint. *Traders & General*, 169 S.W.2d at 148. Thus, U.S. Fire would be entitled to contribution from Houston General. Neither do we think U.S. Fire should be required to accept an assignment from Stricklin, as he urges, and bear the expense of litigation against Houston General when U.S. Fire is only liable for a part of the loss.

 Stricklin asserts, however, that this case is controlled by the doctrine enunciated in *St. Paul Fire & Marine Ins. Co. v. Crutchfield*, 162 Tex. 586, 350 S.W.2d 534, 538 (1961). We cannot agree. In *Crutchfield*, two policies existed covering the same property. The court held that a mortgagee was not bound by the apportionment clause in the policy and could recover its entire loss, subject to the policy limits, from one insurer. The court did, however, recognize

that the second policy would constitute "other insurance" *if the mortgagee ratified the second policy.* Here, Stricklin has, as a matter of law, ratified the Houston General policy by asserting a claim under that policy and filing suit to recover on that claim. *American Surety Co. v. Martinez,* 73 S.W.2d 109 (Tex.Civ.App.—El Paso 1934, writ ref'd). *Crutchfield* is, therefore, not controlling.

■ Stricklin also contends that the Houston General policy is not "other insurance" with respect to him because article 6.15 of the Texas Insurance Code (Vernon 1963) provides that the interest of a mortgagee under a fire insurance policy shall not be invalidated by any act of the mortgagor and that any provision in the insurance contract to the contrary shall be void. The simple answer is that even if the act of the owner in obtaining the Houston General policy could not make Stricklin subject to the apportionment clause, Stricklin's own act of ratifying the Houston General policy would make the apportionment clause applicable. Consequently, there is no violation of article 6.15. Accordingly, we hold that Stricklin is bound by the "other insurance" clause and may recover only a pro rata share of his loss from U.S. Fire.

■ Stricklin argues, however, that it would be prejudicial to him on the damage issues to admit evidence of the second policy before the jury. This may be true; however, upon retrial, the trial court, acting on a proper motion in limine, need not admit before the jury evidence of the second policy since it only pertains to a question of law for the court. U.S. Fire is entitled to have this evidence admitted so that the court can prorate the loss found by the jury. Of course, where the question of ratification is one for the jury, of necessity, evidence of the second policy must be admitted. In any event, the insured can protect himself from any possible jury prejudice by requesting proper instructions from the trial court.

*Consolidation*

■ U.S. Fire next argues that the trial court abused its discretion in refusing to consolidate this suit with Stricklin's suit against Houston General.[1] In this respect, it asserts that because the liability of the two insurers is several, not joint, U.S. Fire could not have, on its own initiative, brought Houston General into this litigation as a third-party defendant. We cannot agree that the trial court's refusal to consolidate was an abuse of its discretion. Texas Rules of Civil Procedure 174(a), which sets forth the standard for consolidation, provides that: "When actions involving a common question of law or fact are pending before the court, it *may* order a joint hearing or trial of any or all matters in issue in the actions; . . . "[emphasis added]. Thus, rule 174 has been held to be discretionary with the trial court, and only where there is an abuse of that discretion by the trial court will the order be reversed. *Kemp v. Harrison,* 431 S.W.2d 900, 904 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.); *see Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677 (1956). The question of whether the trial court erred in refusing to consolidate the causes may turn on whether Houston General was a necessary party to the suit between Stricklin and U.S. Fire. *See Mid-America Pipeline Co. v. Hadwiger,* 471 S.W.2d 157, 160 (Tex.Civ.App.—Amarillo 1971, no writ) (ordering consolidation of two eminent domain suits, one against the lessor and the other against the lessee). Since the liability of U.S. Fire and Houston General is several, rather than joint, it follows that Houston General is not a necessary party. However, Houston General would be a proper party, and the trial court could have ordered consolidation. Indeed, since the issues to be tried are identical, consolidation might have been in the interest of judicial economy. We do note, however that at the time the motion to consolidate was denied, there was pending in this court an appeal by Houston General

---

1. The order denying consolidation was made by the judge of the 14th District Court since the local rules require the motion to be filed in the senior case, which was the case against Houston General pending in the 14th court.

in the senior case from an adverse ruling by the trial court on its plea of privilege. *Houston General Lloyds Ins. Co. v. Stricklin*, 538 S.W.2d 178 (Tex.Civ.App.—Dallas 1976, writ dism'd). Indeed, one of the arguments made by Stricklin in opposing consolidation was that if this court had reversed the venue ruling and transferred the cause to another county, the order of consolidation would have created additional difficulties. Under these circumstances, we hold that no abuse of discretion is shown.

### Crawford's Testimony

U.S. Fire also contends that the ruling of the trial court excluding Crawford's testimony was manifestly unfair and inconsistent in that Stricklin's expert, Beneke, based his opinion on the same facts and had similar experience to Crawford. We agree. Both were engaged at the time of trial as independent adjusters for insurers and insureds, and both had been previously employed by U.S. Fire as staff adjusters. Stricklin made no objection to Crawford's qualifications as an expert, but objected to his testimony on the ground that it was based upon hearsay. This objection was sustained. Stricklin contends that this ruling was proper because no objection was lodged against Beneke's testimony based upon hearsay or lack of qualification and because Crawford's testimony was based partially upon hearsay. We cannot agree. Every expert's opinion is, necessarily, in most instances, based in part upon hearsay in that some data obtained from various sources is necessarily hearsay. Specifically, here, Crawford testified to having used "cost guides that are accepted by various area contractors" and telephone conversations with contractors. Although the knowledge obtained in this manner is hearsay, it is one way that an expert on repair costs can keep current on construction costs. This method is perfectly permissible. Since Crawford's credentials as an expert were unchallenged and since any such expert must in part utilize hearsay as a basis for the opinion, the trial court should have admitted the evidence. The better view is to admit the testimony in such a situation, thus leaving to the jury the weight to be given the opinion rather than excluding it. Once an expert is qualified, his opinion should be admitted no matter how ridiculous it may appear to the trial court. *Lewis v. Southmore Savings Ass'n*, 480 S.W.2d 180, 186 (Tex.1972); *Bryant v. Trinity Universal Ins. Co.*, 411 S.W.2d 945, 952 (Tex. Civ.App.—Dallas 1967, writ ref'd n. r. e.). Thus, opposing counsel can argue to the jury that no weight should be accorded the opinion. Of course, the trial court should *not* admit the opinion testimony of a witness not properly qualified as an expert. Here, Crawford's opinion was also based upon "facts" obtained from his personal observation of the damage and from his personal knowledge of repair costs. We conclude, therefore, that an expert's opinion is admissible notwithstanding that it may have been based in part on hearsay information.

Although courts have stated generally that the admission of an expert's testimony rests with the sound discretion of the trial court, this discretion is limited to a determination of whether the witness qualifies as an expert and whether his opinion was based solely on hearsay not generally acceptable within the particular field. Where, as here, both appellant's and appellee's expert witnesses predicated their respective opinions of reasonable construction and repair costs in part on hearsay conversations with contractors, manuals in the business, and other estimates and when the trial court excludes one and admits the other, the trial court abuses its discretion.

### The Summary

U.S. Fire also argues that the trial court improperly admitted a summary of repair expenses. We hold that the record does not establish that the summary was admissible under the test laid down in *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 92–95 (Tex. 1976). For a summary to be admissible, it must be shown that the underlying records are admissible and voluminous, and they

must be made available to the opposing party. *Id.* The testimony reveals that the underlying records consisted of invoices covering repairs made to the entire unit, not just the damaged portion. Two witnesses, Joe Carter and Thomas Byrum, testified concerning the preparation of the summary. Carter is Stricklin's accountant, and Byrum supervised the repair work. Their testimony shows that the underlying invoices do not disclose whether the expenditures were made for repairs necessitated by the fire damage or were for general repairs unrelated to the fire. At one point, Byrum did testify that the invoices contained an internal code which showed on which apartments the labor and materials were expended and that the fire damage primarily occurred in the eight units destroyed by the fire. He also testified, however, that there was some fire damage to the other units and that he had assisted Carter in allocating various expenses to the fire damage and that he had attempted to be fair in doing so. Carter testified that there originally were no notations on the invoices which would permit him to segregate repair expenses into fire damage and other categories. He testified that the allocation was based on Byrum's personal knowledge of where various materials and labor were expended. Apparently, this allocation was not made until well after the repairs were completed. At best, the testimony shows that the invoices were marked with some type of code which allocated repair costs between the fire damage and other repairs. The evidence does not show that this code was placed on the invoices by an employee with personal knowledge of the facts or that such an employee transmitted the information to another employee who made the notations in the regular course of business, nor does it show that the entry was made at or near the time that the repairs were made. Thus, the evidence does not show that the underlying records were admissible. *Hanson Southwest Corp. v. Dal-Mac Construction Co.*, 554 S.W.2d 712 (Tex.Civ.App.—Dallas 1977, supplemental opinion May 27, 1977, writ filed).

*Damage Issues*

In view of our decision to remand on other grounds, we address U.S. Fire's complaint concerning the instructions to the damage issues. In this respect, U.S. Fire contends that the trial court erred in its instructions accompanying special issues one and two. Essentially, U.S. Fire asserts that the issues were erroneous in that they permitted the jury to include other factors in addition to actual cash value.

The jury was asked:

SPECIAL ISSUE NUMBER 1.

What do you find from a preponderance of the evidence to be the actual cash value of the portion of the building located at 329 N. Gilpin Street, Dallas, Texas, that was destroyed or damaged by fire on September 24, 1974?

Answer in dollars, if any, and cents, if any.

Answer: $_____

In determining the "actual cash value" of the portion of the building that was so destroyed or damaged, you are instructed that you may consider *the reasonable cost of repairing and replacing* the destroyed and damaged areas, as evidence of such value. You may also consider such factors as a reasonable amount of depreciation, the building's age, the gainful use to which the building was being put, *and the difference in the market value of the building before the loss as contrasted with the market value of the building after the loss.* [Emphasis added]

Special issue number two was similar, but pertained to personalty. We agree with U.S. Fire. The policy provides:

Subject to the provisions and stipulations of this policy, the following bases for valuation of property are established:

. . . . .

B. Improvements and Betterments:

1. If repaired or replaced at the expense of the insured within a reasonable time after loss, *the actual cash value of the damaged or destroyed improvements and betterments.*

. . . . .

E. All other property at actual cash value. [Emphasis added]

Where the contract provides that the measure of damages is the actual cash value of the damaged or destroyed property, it is equivalent to a market value measure of damages. *Hanover Fire Ins. Co. v. Bock Jewelry Co.,* 435 S.W.2d 909, 919 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).[2] Where the market value is the proper measure of damages, it should be submitted to the jury on the basis of the damaged property's market value immediately before and after the loss. *Calhoun v. United States Fire Ins. Co.,* 489 S.W.2d 359, 361 (Tex.Civ.App.—Amarillo 1972, writ ref'd n. r. e.); *Lerman v. Implement Dealers Mutual Ins. Co.,* 382 S.W.2d 285, 287 (Tex.Civ.App.—Houston 1964, writ ref'd n. r. e.). As this court stated in *Aetna Casualty & Surety Co. v. Clark,* 427 S.W.2d 649, 655 (Tex.Civ.App.—Dallas, 1968, no writ):

> The measure of damages under an insurance contract insuring a dwelling, when the loss is not total, is the difference between the value of the property immediately before and immediately after the loss and damage, but within the amount of the policy.

Here the trial court submitted the issue substantially in the language of the policy, "the actual cash value of the building . . . destroyed or damaged . . . ." This language by itself might have been confusing, since a destroyed building would have no market value, and the value of a damaged building would not be a proper measure of the loss. The court apparently recognized, therefore, that an explanatory instruction was needed. The instruction as given, however, was misleading in that it included the ultimate measure of difference in market value as only one factor which the jury could "also consider." Also included in the instructions were other factors such as cost of repairs. Thus, the jury was not bound to follow the contractual measure of damages, but was free to choose among the factors set forth and was not compelled to make a determination of the before and after difference in actual cash values. The reasonable and necessary costs of repairs may be taken into consideration in determining the market value before and after, but may not be the sole basis of market value. *Millers Mutual Fire Ins. Co. v. Eggleston,* 357 S.W.2d 766, 767 (Tex.Civ.App.—Fort Worth 1962, no writ). The vice in the instructions given here is that it permitted the jury to fix the actual cash value of the damaged building solely upon the cost of repairs, not limited by the difference in market value. Thus, upon retrial, the trial court should give instructions not inconsistent with this opinion. Of course, under Tex.R.Civ.P. 277, the trial court need not submit two separate issues on value before and after; provided, however, that the instructions submit the correct measure of damages.

U.S. Fire also contends that the trial court erred in overruling its plea in abatement because a necessary party, the first mortgagee, was not a party. Since Stricklin subsequently obtained an assignment of the first mortgagee's interest, this point will be moot on remand, and we need not pass on this question.

Reversed and remanded.

---

2. Our statement in *Mew v. J & C Galleries, Inc.,* 554 S.W.2d 249 (Tex.Civ.App.—Dallas, 1977, no writ filed), that the two were not equivalent under the holding in *Crisp v. Security Nat'l Ins. Co.,* 369 S.W.2d 326 (Tex.1963), was predicated upon our decision to treat actual cash value and reasonable value of the loss to the insured as equivalent for the purpose of the opinion in *Mew,* since the parties apparently made no distinction. We are now faced with the necessity of distinguishing between the two terms. Actual cash value is equivalent to market value, but reasonable value to the insured is not equivalent to the first two terms. The contract provision in the U.S. Fire policy is distinguishable from the provision construed in *Crisp* in that it clearly provides a contractual measure of damages, rather than a limitation on damages. Thus, the reasonable value of the loss to the insured is not an applicable measure of damages as it was in *Crisp.*