Affirmed and Memorandum Opinion filed January 9, 2007








Affirmed and Memorandum Opinion filed January 9, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-01415-CR

____________

 

DARLENE DRUDE BLACKSTOCK, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 179th
District Court

Harris County, Texas

Trial Court Cause No. 940197

 



 

  M E M O R A N D U M    O
P I N I O N

Appellant, Darlene Drude Blackstock, was convicted of
aggregate theft of an amount greater than $20,000.00 and less than $100,000.00
and sentenced to five years= imprisonment.  In this appeal, Blackstock
challenges the trial court=s admission of forty-one of the State=s exhibits.  We
affirm.








I.  Factual and
Procedural History

Blackstock worked
for Ralston Drug Stores, Inc.=s Houston warehouse[1]
from July 1985 until June 1999.  Her responsibilities included collecting the
cash and checks that Ralston=s delivery drivers received from customers
who paid C.O.D. (cash on delivery), filling out deposit slips, placing a
completed deposit slip in an envelope with the cash and checks collected, and
placing the envelope in the company=s safe to be
retrieved and delivered to Ralston=s bank by an
armored transport service.  For accounting purposes, Blackstock was also
required to place a copy of the deposit slip and the invoices corresponding to
the payments in an envelope and give the envelope to a co-worker.  The
co-worker then recorded the data in the company=s computer system.

On June 17, 1999,
Barbara Pettit, Ralston=s comptroller and office manager, noticed
that three deposit slips Blackstock had completed did not appear on the
preceding month=s bank statement.[2] 
Pettit immediately began reviewing the invoices and documents related to these
transactions in order to locate the problem.  Brad Klawitter, the general
manager of Ralston=s wholesale division and Blackstock=s immediate
supervisor, informed the company=s president, Rick
Zapp, of the discrepancy.  On June 18, 1999, Klawitter informed Blackstock that
Zapp wanted to meet with her.  Blackstock then left the warehouse and never
returned.

After Blackstock=s departure, Mary
Ann Zapp[3]
and fraud examiner Judith Golicki spent several months investigating Ralston=s accounting
irregularities and reviewing bank statements, invoices, check stubs, and
receipts.                             








In February 2003,
Blackstock was indicted on a felony charge of aggregate theft for allegedly
stealing money from her employer between August 29, 1995, and April 30, 1999. 
The case was tried to a jury in December 2003.  The prosecution argued that
Blackstock had perpetrated what is called a Alapping@ scheme in which
Blackstock stole currency and applied checks to the wrong customer=s account in order
to conceal the shortage.  The prosecution  argued that such schemes cannot last
indefinitely and usually result in the perpetrator making Afake deposits@ such as those
allegedly contained in State=s Exhibits 6 and 7.    

Mary Ann Zapp
testified that Blackstock stole a total of $59,877.61 from Ralston during this
time period, and Judith Golicki testified that Blackstock made $41,485.00 in
cash deposits to her personal checking account during the same period. 
Blackstock testified that the accounting practices and money handling procedures
at Ralston were extremely lax and that someone else could have taken the
missing currency.  Her husband testified that a truck and a timeshare the
couple bought during this period were purchased using his money. 

The trial court
admitted three sets of exhibits into evidence that are central to the State=s case.  State=s Exhibits 6 and 7
concern the alleged Afake deposits@ made in March
1999.  State=s Exhibits 8B44 are profiles of
instances of alleged theft on specific dates, together with supporting
documents.  State=s Exhibits 50 and 51 were offered and
admitted as exemplars of properly completed accounting paperwork.








With the exception
of Exhibits 6 and 7, each exhibit consists of a cover page and annotated Ralston
records and is divided into four labeled parts.  Part A is the cover page, and
contains a synopsis of the collections and deposits on a particular date as
well as comments and descriptions of parts B, C, and D.  In many of these
exhibits, Part A also included Mary Ann Zapp=s
characterizations, inferences, and other material not found in the underlying
documents.[4] 
Part B is a copy of that date=s deposit slip, Part C contains the Adaily work@ for the day in
question (mostly copies of invoices), and Part D contains the Aaffected part@ of the armored
transport company=s paperwork concerning Ralston=s deposits or
material from other third parties.  Parts B, C, and D of the exhibits often
contain annotations such as checkmarks, highlighting, identification of the
method of payment, and calculations.

Blackstock
initially objected to the admission of these exhibits on the grounds that they
contain hearsay.  In addition, Blackstock objected to Exhibits 6, 8, and 16 on
the grounds that they did not constitute business records.  The trial court
overruled Blackstock=s objections to Exhibits 6B8, 16, 51, and 52;
however, the trial court did not immediately rule on Blackstock=s objection to
Exhibits 9B15 and 17B44  and her
objection to these exhibits was subsequently abandoned.  

The jury convicted
Blackstock of aggregate theft.  Blackstock was sentenced to five years= imprisonment, and
this appeal ensued.

II.  Issues Presented

In three issues,
Blackstock challenges the admission of State=s Exhibits 6B44, 50, and 51 as
summaries under Texas Rule of Evidence 1006.  Specifically, Blackstock argues
that the documents purportedly summarized are not business records, and
therefore are not admissible.  Consequently, she contends that both the
underlying documents and the summary portions of the exhibits should have been
excluded.  See Tex. R. Evid. 1006
(allowing the court to admit summaries of voluminous material that is Aotherwise
admissible@); Tex. R.
Evid. 803(6) (governing admission of business records).  She further argues
that the summary sections of the exhibits are inadmissible because they include
inferences, notations, and conclusions beyond the scope of the material
summarized.








III.  Standard of Review

The admission of evidence is within the discretion of the
trial court.  Montgomery v. State, 810 S.W.2d 372, 379 (Tex. Crim. App.
1990).  A trial court abuses its discretion when it rules without regard for
any guiding rules or principles.  Id. at 380 (citing Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241B42 (Tex. 1985)). 
However, if the trial court=s ruling admitting the evidence falls
within the Azone of reasonable disagreement,@ there is no abuse
of discretion and we will uphold the ruling.  Rachal v. State, 917
S.W.2d 799, 807 (Tex. Crim. App. 1996).  

IV.  Analysis

The issues as framed do not align neatly with Blackstock=s objections in
the trial court or her arguments on appeal.  Specifically, she contends that
all of the challenged exhibits were improperly admitted as summaries under
Texas Rule of Evidence 1006, but this objection was never raised in the trial
court.  She further argues that specific parts of the exhibits were
inadmissible as summaries or business records, but her objections at trial did
not separately address the different parts of the exhibits.  

In order to clarify which objections or arguments have been
presented and preserved, if any, we begin by reviewing the objections to the
various exhibits.

A.      Basis of
Objections

State=s Exhibits 6 and 7 were offered into
evidence as examples of alleged Afake deposits@ made in March
1999.  Exhibits 8B44 were offered as evidence of individual
acts of theft on specific dates, and Exhibits 50 and 51 were offered as
examples of properly completed accounting paperwork.  Although Exhibits 6 and 7
are not formally divided into subparts, they follow the same format found in
Exhibits 8B44, and 50B51: a summary page
followed by annotated copies of documents.  








Blackstock raised global business record and hearsay
objections to Exhibits 8 and 16[5]
and objected and obtained rulings on Exhibits 6, 7, 50, and 51 only on general
hearsay grounds.  Each of these objections was overruled. 

B.      Abandoned
Objections

After State=s Exhibits 8 and 16 were offered into
evidence individually and Blackstock=s objections were
overruled, the State discussed Exhibits 8B44 in chronological
order.  The prosecutor noted that Exhibits 8 and 16 had  already been admitted
and offered Exhibits 9B15 and 17B44.  After this
offer was made, the following exchange took place:

Defense Counsel:   Well, Judge,
same objection.  I=m objecting to hearsay toCthose files contain hearsay.

Court:          You know, I know
that you=ve proved them up on these
individual ones.  Have you done the grouping yet?

Prosecutor:            I=ll do it again, Judge, if you=d like me to so that we=re clear.  [The prosecution then
laid the foundation for admission of all the exhibits as business records.]
Tender, Judge.

Defense Counsel:   No
objection, Your Honor.








It appears from the record before us that Blackstock
initially objected to exhibits 9B15 and 17B44 solely on the
basis that the exhibits contained hearsay.  Before the judge ruled on the
objection, the State elicited testimony from Mary Ann Zapp that (1) she had
prepared and examined each of the exhibits, including their summaries; (2) she
exercises care, custody, and control over Ralston=s records; (3) the
records were kept in the regular course of Ralston=s business; (4)
the records were made by persons with personal knowledge of the events
recorded; (5) the entries in the records were made at or near the time of the
events recorded; (6) the records are originals or copies of originals; and (7)
the exhibits include bank records accompanied by a business records affidavit
from Ralston=s bank.  Following this testimony, Blackstock=s trial counsel
effectively  withdrew the hearsay objection to Exhibits 9B15 and 17B44.[6]  
Because Blackstock failed to obtain a ruling on her objection and subsequently
abandoned her objection to  Exhibits 9B15 and 17B44, she has failed
to preserve error, if any, in their admission.  See Tex. R. App. P. 33.1(a).  

We overrule Blackstock=s challenge to the
admission of State=s Exhibits 9B15 and 17B44 as stated in
her first issue.

C.      Admission of Summaries

On appeal, Blackstock states, AThe court
overruled the hearsay objections of defense counsel after accepting the State=s view that Part A
of each exhibit was a summary within the meaning of Texas Rule of Evidence 1006
and Parts B, C, D, and E [sic] supporting it were business records admissible
under Rule 803(6).@  Specifically, she argues that the
summaries are inadmissible for two reasons: (a) the underlying business
records are inadmissible, and (b) the summaries do not merely summarize the
underlying documents, but are the equivalent of an expert=s inadmissible
written report.  

1.       Alleged
Inadmissibility of the Underlying Business Records 

Blackstock objected to Exhibits 8 and 16 on the grounds
that they were not Aon file@ as business
records, but preserved no similar objection to the remaining exhibits.  Because
Blackstock did not raise and preserve objections to the admission of the
business records of Exhibits 6, 7, 50, or 51, her arguments that portions of
these exhibits are inadmissible as business records are waived.  See Tex. R. App. P. 33.1(a).[7]








Although her business record objections to Exhibits 8 and
16 are vague, Blackstock arguably raised the objection that the records were
not admissible under Texas Rule of Evidence 803(6).  Here, Blackstock contends
that Part A of each exhibit was erroneously admitted as a summary under Texas
Rule of Evidence 1006.  This Rule allows certain writings and records to be
introduced in the form of summaries or charts.  For this Rule to apply, the
writings and records must be: (1) so voluminous they cannot be conveniently
examined, (2) otherwise admissible, and (3) made available for examination
or copying by other parties at a reasonable time and place.  Tex. R. Evid. 1006.  Blackstock does
not dispute that the first and third requirements were met; rather, she
contends that the documents contained in Parts B, C, and D of the exhibits are
not admissible as business records because they contain notations and
highlighting added during the investigation of Blackstock=s conduct.[8] 
Thus, she argues, because the records were not Aotherwise
admissible@ as business records, the summaries of the records are
likewise inadmissible.  See id.;  Tex.
R. Evid. 803(6).








On the facts before us, we cannot say the trial court
abused its discretion in denying Blackstock=s general
objections as stated during trial.  Although Blackstock objects to specific
subparts of the exhibits on appeal, her objections in the trial court were
global, and did not identify or describe the writing or the part of the exhibit
that Blackstock believed objectionable.  It is unclear whether many of the
markings are part of the original business records or are later additions to
preexisting records.  Although Mary Ann Zapp testified that highlighting was a
later addition, individual words, symbols, and calculations are more
ambiguous.  The handwriting of both Mary Ann Zapp and Blackstock allegedly
appear on the documents, and the markings made by Blackstock form a part of the
original business record.  Thus, it was Blackstock=s responsibility
in the trial court to narrow her objection and identify the material about
which she complains on appeal.  See Brown v. State, 692 S.W.2d 497, 501
(Tex. Crim. App. 1985) (A[W]hen an exhibit contains both admissible
and inadmissible material, the objection must specifically refer to the
material deemed objectionable@).  We do not agree that the trial court
abused its discretion in overruling the objections as asserted at trial.








We further disagree with Blackstock=s suggestion that
any addition to a preexisting business record necessarily renders the record
inadmissible.  In United States Fire Ins. Co. v. Stricklin, 556 S.W.2d
575, 580B81 (Tex. Civ. App.CDallas 1977, writ
ref=d n.r.e.), the
Fifth Court of Appeals held that the trial court improperly admitted a summary
of expenses for repairs to apartments damaged by fire because the records
summarized were inadmissible.  Specifically, the court noted that the
underlying records were Ainvoices covering repairs made to the
entire unit, not just the damaged portion.@  Id. at
581.  An internal code had been added to the invoices long after the repairs
were made indicating which repairs were fire-related, but there was no evidence
that the markings were (a) placed on the invoices by a person with personal
knowledge of the facts, (b) made in the regular course of business, or (c) made
at or near the time the repairs were made.  Id.  However, the Texas
Supreme Court specifically disapproved the holding that these underlying
records were inadmissible.  Stricklin v. United States Fire Ins. Co.,
565 S.W.2d 43 (Tex.1978) (per curiam).  Thus, Stricklin suggests that a
document is not rendered inadmissible per se as a business record solely
because additional notations are later added to the document.  Here, Mary Ann
Zapp testified that she added at least some of the notations, she is a
custodian of the records, and she assembled or created the exhibits in the
usual course of business.  Thus, the business records in the exhibits at issue
meet more of the criteria governing the admission of business records than
those held admissible in Stricklin.  See Tex. R. Evid. 803(6).[9]

We overrule Blackstock=s challenge to the
admission of the records contained in Parts B, C, and D of Exhibits 8 and 16. 
Because the trial court did not abuse its discretion in overruling Blackstock=s objection to
these records, we likewise overrule Blackstock=s argument that
Part A of Exhibits 8 and 16 is not based on Aotherwise
admissible@ material, as presented in her second issue.  Finally,
we overrule Blackstock=s challenge to the admission of Part A of
Exhibits 6, 7, 50, and 51 as encompassed in her first and third issues; having
failed to raise and preserve an objection to the admission of the records
contained in Parts B, C, and D of these exhibits, her argument that the summary
of these records found in Part A is inadmissible is waived.  See Tex. R. App. P. 33.1(a). 

2.       Material in Summaries Not Found in the Underlying
Business Records








Blackstock=s argument that statements contained in
the exhibit summaries exceed the scope of the material summarized is raised for
the first time on appeal.  Blackstock did not object at trial to the admission
of any part of the exhibits as summaries under Texas Rule of Evidence 1006, but
stated global hearsay and business records objections to entire exhibits.[10] 
Because her complaint on appeal does not comport with the objection made at the
trial court and does not identify the portion of the exhibit about which she
now complains, Blackstock has failed to preserve this argument for review.  See
Wilson v. State, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002); Tex. R. App. P. 33.1(a); see also
Brown, 692 S.W.2d at 501; Clark v. Walker-Kurth Lumber Co., 689
S.W.2d 275, 281 (Tex. App.CHouston [1st Dist.] 1985, writ ref=d n.r.e.) (holding
that appellant who objected to business records at trial based on lack of
personal knowledge Acannot enlarge his complaint on appeal@ to include the
argument that the proper predicate was not laid for a summary of the records
under Rule 1006).

We overrule Blackstock=s additional
challenge to the admission of the summary portions of State=s Exhibits 6B8, 16, 50, and 51
as stated in her first, second, and third issues.      

V. Conclusion

For the foregoing reasons, we affirm the judgment of the
trial court.          

 

 

 

/s/      Eva M. Guzman

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed January 9, 2007.

Panel consists of
Justices Anderson, Hudson, and Guzman.

Do Not Publish C Tex. R. App. P. 47.2(b).









[1]  Ralston Drug Stores, Inc., is a family-owned
corporation that operates retail liquor stores and delivers liquor to
restaurants and night clubs in the Houston area.  





[2]  At trial, the State referred to these deposit slips
as Afake deposits@;
they are the subject of State=s Exhibits 6
and 7.  Defense counsel objected to the admission of these exhibits on the
basis of hearsay. 





[3]  Mary Ann Zapp is the wife of Rick Zapp, the company=s president.





[4]  See, e.g., Exhibit 6 (AThe daily deposit reconciliation report was falsified
to make it appear that Armored Transport picked up the deposit on March 31,
1999.  This was accomplished using the no-print function on the calculator@); Exhibit 9 (AThis
deposit cleared before the deposit for the daily work of August 29, 1995, an
indication the suspect was holding deposits@);
Exhibit 13 (AThis evidence reveals the lapping scheme Ms.
Blackstock was working@); Exhibit 15 (AThe
notations written around the copy indicate[] how the daily work was manipulated
in order to balance . . . Again, this is evidence of the deposits and checks
being held for covering the wrong invoices@);
Exhibit 16 (AThere was NO reason why Bristol Hotel would cash a
check through Ralston=s.  This is another example of currency missing and a
check put through to cover the missing cash@);
Exhibit 17 (AThe paper work could not be found, but the customer
will testify that it was a CASH transaction@);
Exhibit 37 (AThis was Ms. Blackstock=s way of covering the shortage@);
Exhibit 41 (AAlso, note the deceptive dates shown on these bank
deposits.@).





[5]  When Exhibit 8 was tendered, Blackstock=s trial counsel objected, stating, AJudge, again, unless these were on file as business
records, we would object.  It=s hearsay.@  Defense counsel similarly objected to Exhibit 16,
saying AJudge, again, I have the same objection.  They were
not on file in the business records.  Object to hearsay.@ 





[6]  We do not construe the statement from Blackstock=s trial counsel that there was Ano objection@ to
include Exhibits 8 and 16 because these documents were already offered and
admitted over Blackstock=s objection.





[7]  Blackstock=s
defense counsel objected to Exhibit 6, stating, AThis contains hearsay.  It was not put in the business records
affidavit; and we have the best evidence, which is the actual person here who
can testify to whatever her conclusions are.  And there is tons of hearsay in
there, and I object to it.@  When the
trial court sought clarification, Blackstock=s
attorney repeated only the hearsay objection.  It is not clear whether
Blackstock intended to assert that the documents are inadmissible under Texas
Rule of Evidence 803(6).  If so, this objection to Exhibit 6 was waived for
failure to obtain a ruling.  See Tex.
R. App. P. 33.1(a).  Blackstock raised no business record objection to
State=s Exhibits 7, 50, or 51.





[8]  The notations on the records of Exhibits 8 and 16
include checkmarks; highlighting; the identification of payors next to records
of checks deposited; the identification of collections made by cash, check, or
C.O.D.; and calculations. 





[9]  Even assuming that the records at issue were
inadmissible, any error in their admission was harmless.  Mary Ann Zapp
testified in some detail regarding her investigation of the collections and
deposits Blackstock performed on August 29, 1995, and August 28, 1996Cthe dates at issue in Exhibits 8 and 16,
respectively.  Not only did she testify that, based on her detailed
investigation, Blackstock failed to deposit an aggregate total of $59,877.61,
but she specifically testified without objection that the deposits were missing
$163.10 on August 29, 1995, and $686.47 on August 28, 1996.  This is the same
information contained in greater detail in Exhibits 8 and 16.  Moreover,
thirty-five similar exhibits were admitted without a preserved objection. 
Exhibits 9B15 and 17B44
contain evidence that more than $59,000.00 was stolen, a figure nearly three
times the amount needed to support Blackstock=s conviction on the charged offense.





[10]  As previously indicated, the majority of each of the
exhibits consisted of records, not summaries.