

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00026-CV

IRBY J. MACREADY
AND MORRIS D.
ALFORD, D/B/A MCM
MINI-STORAGE

APPELLANTS

V.

ROBERT SALTER

APPELLEE

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

## I. Introduction

In two issues, Appellants Irby J. Macready and Morris D. Alford, d/b/a

MCM Mini-Storage, appeal a $32,000 judgment rendered against MCM after it

---

[1]See Tex. R. App. P. 47.4.

sold Appellee Robert Salter's property in violation of the property code. We modify the trial court's judgment and affirm the judgment as modified.

## II. Factual and Procedural History

After defaulting for five months on his two storage units leased from MCM, Salter owed MCM $785. MCM mailed notices of claim for both units by certified mail, but Salter did not receive the notices. MCM then placed an ad in the local newspaper, stating that it would sell Salter's property at auction. Three days later, MCM sold Salter's property to Kenny Reiter for $202, which was applied to Salter's debt, and Salter filed suit. MCM then filed a counterpetition for the delinquent rental fees. The trial court found that there was no dispute that the sale of Salter's property was premature, a material breach of the parties' agreement, and a violation of chapter 59 of the Texas Property Code.

At trial, Salter admitted that he had been behind on his rent but contended that his property was worth more than the delinquent fees. Salter produced an inventory and valuation of the property that was in the storage units and testified that the property consisted of household items that he had purchased new eight years earlier for his lake house and then stored for four years. He stated that when he put the property in storage, it was in excellent condition because he had used it only on weekends and vacations. Salter's son Kyle and his brother-in-law Anthony Borecki, who had helped Salter put the property in storage, also testified that the property was in excellent condition. Salter testified that because there

2

was no replacement market for household items, he would have to replace them with new items, which would cost $97,902.74, and he stated that the replacement cost reflected the items' actual value to him.

Reiter, who had purchased the property from MCM, testified that shortly after he bought it, he returned to MCM's office, met with Salter, and offered to sell the property back to Salter for $1,000 but that Salter refused. However, both Salter and Janice Stanfield, who was with Salter at MCM's office, denied that Reiter ever offered to sell back the property.

After closing, the trial judge stated, "[T]here's no way in the world I believe that property was worth $97,000, just like there's no way in the world I believe it was worth only [$1,000]." He then asked Salter's attorney what amount Salter deserved; Salter's attorney responded that Salter should receive one-third of the replacement price—approximately $32,000. The trial judge also asked MCM for an amount; MCM's counsel argued that Salter failed to prove his case but did not counter Salter's suggested amount. Consequently, the trial court awarded $32,000 to Salter. In its conclusions of law, the trial court expressly stated that "[c]onsidering the range of evidence presented at trial, [it] found the property to be worth $32,000.00 at the time it was auctioned." This appeal followed.

### III. Sufficiency of the Evidence

In two issues, MCM claims that the evidence was insufficient to support the trial court's judgment and that the trial court instead should have awarded $583 to MCM for Salter's delinquent rental fees.

### A. Standard of Review

Findings of fact entered in a case tried to the court have the same force and dignity as a jury's answers to jury questions. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards that are applied in reviewing evidence supporting a jury's answer. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, "*No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). In determining whether there is legally sufficient evidence to support the finding

4

under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

**B. Law on Damages**

The trial court has discretion to award damages within the range of evidence presented at trial. *Gulf States Utils. Co. v. Low*, 79 S.W.3d 561, 566 (Tex. 2002). The supreme court has recognized that "used household goods,

5

clothing and personal effects" have no ordinary market value. *Crisp v. Sec. Nat'l Ins. Co.*, 369 S.W.2d 326, 328 (Tex. 1963) (stating that recovery should not be based on a secondhand market). Therefore, the measure of damages that should be applied to household property is the actual value of the property to its owner for use in the condition in which it was at the time of the injury. *Id*. at 328–29 (stating that when household goods have no recognized market value, actual value to the owner must be determined without resort to market value).

In determining actual value to the owner, the trial court may consider the original cost, replacement cost, opinions of qualified witnesses, the property's use, and any other reasonably relevant facts. *Gulf States*, 79 S.W.3d at 566 (quoting *Allstate Ins. Co. v. Chance*, 590 S.W.2d 703, 704 (Tex. 1979)). A property owner may testify about the value of his personal property. *Id. (*citing *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)); *T.R.S. v. State*, 663 S.W.2d 920, 922 (Tex. App.—Fort Worth 1984, no writ) (citing *Crisp*, 369 S.W.2d at 326).

### 1. Property Damages

In MCM's first issue, it argues that because Salter failed to offer proof that his property had no "recognized market value," he was barred from testifying about its value. The supreme court has held that used household items, like Salter's property, have no ordinary market value. *See Crisp*, 369 S.W.2d at 328. The record reflects that Salter presented evidence showing that the storage units contained household items from his lake house. *See id.* at 329 (holding that

6

when household goods have no recognized market value, actual value to the owner must be determined). Therefore, once Salter presented evidence showing that his property consisted of used household items, he was not required to prove that they had no market, and he was able to testify about their value. *See Gulf States*, 79 S.W.3d at 566 (stating that when measuring damages for household goods, "[i]t is well settled that a property owner may opine about the property's value").

Alternatively, MCM argues that Salter failed to provide sufficient evidence of the property's value to support the trial court's award of damages. In support of its contention, MCM relies on *Gulf States*, claiming that Salter failed to provide the court with a range of damages. *See* 79 S.W.3d at 567. However, in *Gulf States*, the plaintiff gave the jury a list of items that he had lost but left it up to the jury, based on their own life experiences, to place a monetary value on those items. *Id.* at 566–67, 570. The court stated that although in some situations the replacement value of property is not an appropriate measure of damages because it could result in an economic gain to the injured party, the jury has discretion to award damages within the range of evidence presented at trial. *Id.* at 566. The court concluded that because the plaintiff offered no evidence whatsoever to provide the jury with a range of damages, he was not entitled to recovery as a matter of law. *Id.* at 567.

7

Unlike the plaintiff in *Gulf States*, Salter not only testified about the contents of the storage units but also provided evidence to establish the contents' monetary value—$97,902.74. Salter produced an inventory and valuation of the items contained in the units and testified that the valuation of the items showed their true value to him. *See Allstate*, 590 S.W.2d at 704 (holding that the trier of fact may consider replacement costs to determine the actual value to the owner) (quoting *Crisp*, 369 S.W.2d at 329); *cf. Gulf States*, 79 S.W.3d at 566. Further, although the items were eight years old, the trial court heard no evidence to indicate that they were in disrepair; rather, the testimony was that their condition was excellent. Therefore, Salter presented evidence that showed that the household items' value to him at the time they were sold was $97,902.74.

In response, MCM presented evidence that Salter was given the opportunity to buy his property back for $1,000. Although MCM did not expressly argue that Salter's property was worth only $1,000, it appears that the trial court inferred that it was MCM's contention that the property was worth only $1,000. Hence, MCM's evidence, along with Salter's estimated replacement cost, provided the trial court with a range of damages upon which it could exercise its discretion. *See Gulf States*, 79 S.W.3d at 566.

At closing, the trial court expressly stated that it did not believe that the property was worth $97,000 or only $1,000, acknowledging the range of

8

damages it had been presented.  Seeking additional guidance, the trial court allowed counsel to argue; Salter's attorney argued that Salter should receive one-third of the replacement cost—approximately $32,000, and MCM's attorney argued only that Salter had failed to prove his case.

Because the trial court was free to award Salter any amount of damages within the range presented, although it awarded damages based on Salter's attorney's suggested amount, its award was within the range presented at trial, and therefore, it did not abuse its discretion.  *See id.*; *Price Pfister, Inc. v. Moore & Kimmey, Inc.*, 48 S.W.3d 341, 352 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (upholding a damage award within the range of evidence presented at trial, even though part, but not all, of the award was based on the plaintiff's speculation).  As there was more than a scintilla of evidence to support the amount awarded by the trial court, and as the evidence presented at trial was not so weak or so contrary to the overwhelming weight of all the evidence to be factually insufficient, we overrule MCM's first issue.

### 2. Offset Damages

In its second issue, MCM argues that the trial court should have awarded $580 to MCM for Salter's delinquent rental fees.  The right of offset is an affirmative defense, and the burden of pleading and of proving the facts necessary to support it are on the party asserting the right to the offset.  *Brown v. Am. Transfer & Storage Co.*, 601 S.W.2d 931, 936 (Tex.), *cert. denied*, 449 U.S.

1015 (1980). When a party attacks the legal sufficiency of an adverse finding on an issue for which he had the burden of proof, he must demonstrate that the evidence established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (citing *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989)).

After Salter filed suit, MCM filed a counterpetition, seeking $583 in delinquent rental fees for the five months' rent that Salter owed MCM under the lease agreement after the $202 from the sale of the property to Reiter had been deducted from the original $785. At trial, MCM offered evidence that showed Salter owed $291.50 for each unit, totaling $583, and Salter admitted that he owed MCM the delinquent payments. In its findings of fact and conclusions of law, the trial court found that Salter's property was worth $32,000—the exact amount awarded to Salter—and recognized that the parties had formed a legally enforceable contract; however, it did not address MCM's claim for Salter's breach of that contract. We hold that MCM conclusively established its right to Salter's delinquent fees and that no evidence supports the trial court's failure to award MCM those damages. Therefore, MCM is entitled, as a matter of law, to an offset in the amount of $583. We sustain MCM's second issue.

## IV. Conclusion

Having overruled MCM's first issue and sustained its second issue, we modify the trial court's judgment to incorporate MCM's $583 offset, decreasing

10

Salter's award to $31,417, and affirm the trial court's judgment as modified.  *See* Tex. R. App. P. 43.2(b); *Khorshid, Inc. v. Christian*, 257 S.W.3d 748, 763–64 (Tex. App.—Dallas 2008, no pet.) (holding that appellant established his right to an offset for delinquent taxi stand fees as a matter of law); *Smith v. Colonial Grp., Inc.*, No. 10-05-00354-CV, 2006 WL 3028084, at *4 (Tex. App.—Waco Oct. 25, 2006, no pet.) (mem. op.) (offsetting appellant's damages against the actual damages rendered against him and affirming the judgment as modified).

BOB MCCOY
JUSTICE

PANEL:  GARDNER, MCCOY, and GABRIEL, JJ.

DELIVERED:  November 10, 2011