02-11-026-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

NO. 02-11-00026-CV

 

 


 
 
 IRBY J. MACREADY AND MORRIS D. ALFORD, D/B/A MCM
 MINI-STORAGE
 
 
  
 
 
 APPELLANTS
 
 


                                                                                                                             

V.

 


 
 
 ROBERT SALTER
 
 
  
 
 
 APPELLEE
 
 


 

                                                                                                                             

------------

 

FROM THE
235TH DISTRICT COURT OF COOKE COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I. Introduction

          In two issues, Appellants Irby J. Macready
and Morris D. Alford, d/b/a MCM Mini-Storage, appeal a $32,000 judgment
rendered against MCM after it sold Appellee Robert Salter’s property in
violation of the property code.  We modify the trial court’s judgment and
affirm the judgment as modified.

II. Factual and Procedural History

          After defaulting for five months on his two
storage units leased from MCM, Salter owed MCM $785.  MCM mailed notices of
claim for both units by certified mail, but Salter did not receive the notices.
 MCM then placed an ad in the local newspaper, stating that it would sell
Salter’s property at auction.  Three days later, MCM sold Salter’s property to
Kenny Reiter for $202, which was applied to Salter’s debt, and Salter filed
suit.  MCM then filed a counterpetition for the delinquent rental fees.  The
trial court found that there was no dispute that the sale of Salter’s property
was premature, a material breach of the parties’ agreement, and a violation of
chapter 59 of the Texas Property Code.

          At trial, Salter admitted that he had been
behind on his rent but contended that his property was worth more than the
delinquent fees.  Salter produced an inventory and valuation of the property
that was in the storage units and testified that the property consisted of
household items that he had purchased new eight years earlier for his lake
house and then stored for four years.  He stated that when he put the property
in storage, it was in excellent condition because he had used it only on
weekends and vacations.  Salter’s son Kyle and his brother-in-law Anthony
Borecki, who had helped Salter put the property in storage, also testified that
the property was in excellent condition.  Salter testified that because there
was no replacement market for household items, he would have to replace them with
new items, which would cost $97,902.74, and he stated that the replacement cost
reflected the items’ actual value to him.

          Reiter, who had purchased the property from
MCM, testified that shortly after he bought it, he returned to MCM’s office,
met with Salter, and offered to sell the property back to Salter for $1,000 but
that Salter refused.  However, both Salter and Janice Stanfield, who was with
Salter at MCM’s office, denied that Reiter ever offered to sell back the
property.

          After closing, the trial judge stated, “[T]here’s
no way in the world I believe that property was worth $97,000, just like there’s
no way in the world I believe it was worth only [$1,000].”  He then asked
Salter’s attorney what amount Salter deserved; Salter’s attorney responded that
Salter should receive one-third of the replacement price—approximately $32,000.
 The trial judge also asked MCM for an amount; MCM’s counsel argued that Salter
failed to prove his case but did not counter Salter’s suggested amount.  Consequently,
the trial court awarded $32,000 to Salter.  In its conclusions of law, the
trial court expressly stated that “[c]onsidering the range of evidence
presented at trial, [it] found the property to be worth $32,000.00 at the time
it was auctioned.”  This appeal followed.

III. Sufficiency of the Evidence

          In two issues, MCM claims that the evidence
was insufficient to support the trial court’s judgment and that the trial court
instead should have awarded $583 to MCM for Salter’s delinquent rental fees.

A. 
Standard of Review

          Findings of fact entered in a case tried to
the court have the same force and dignity as a jury’s answers to jury
questions.  Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex.
1991).  The trial court’s findings of fact are reviewable for legal and factual
sufficiency of the evidence to support them by the same standards that are
applied in reviewing evidence supporting a jury’s answer.  Ortiz v. Jones,
917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).

          We may sustain a legal sufficiency challenge
only when (1) the record discloses a complete absence of evidence of a vital
fact; (2) the court is barred by rules of law or of evidence from giving weight
to the only evidence offered to prove a vital fact; (3) the evidence offered to
prove a vital fact is no more than a mere scintilla; or (4) the evidence
establishes conclusively the opposite of a vital fact.  Uniroyal Goodrich
Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied,
526 U.S. 1040 (1999); Robert W. Calvert, “No Evidence” and “Insufficient
Evidence” Points of Error, 38 Tex. L. Rev. 361, 362–63 (1960).  In
determining whether there is legally sufficient evidence to support the finding
under review, we must consider evidence favorable to the finding if a reasonable
factfinder could and disregard evidence contrary to the finding unless a
reasonable factfinder could not.  Cent. Ready Mix Concrete Co. v. Islas,
228 S.W.3d 649, 651 (Tex. 2007); City of Keller v. Wilson, 168 S.W.3d
802, 807, 827 (Tex. 2005).  Anything more than a scintilla of evidence is
legally sufficient to support the finding.  Cont’l Coffee Prods. Co. v.
Cazarez, 937 S.W.2d 444, 450 (Tex. 1996); Leitch v. Hornsby, 935
S.W.2d 114, 118 (Tex. 1996).  More than a scintilla of evidence exists if the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds
about the existence of a vital fact.  Rocor Int’l, Inc. v. Nat’l Union Fire
Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

          When reviewing an assertion that the
evidence is factually insufficient to support a finding, we set aside the
finding only if, after considering and weighing all of the evidence in the
record pertinent to that finding, we determine that the credible evidence
supporting the finding is so weak, or so contrary to the overwhelming weight of
all the evidence, that the answer should be set aside and a new trial ordered.  Pool
v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh’g); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).

B.  Law on Damages

          The trial court has discretion to award
damages within the range of evidence presented at trial. Gulf States Utils.
Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002).  The supreme court has
recognized that “used household goods, clothing and personal effects” have no
ordinary market value.  Crisp v. Sec. Nat’l Ins. Co., 369 S.W.2d 326,
328 (Tex. 1963) (stating that recovery should not be based on a secondhand
market).  Therefore, the measure of damages that should be applied to household
property is the actual value of the property to its owner for use in the
condition in which it was at the time of the injury.  Id. at 328–29
(stating that when household goods have no recognized market value, actual
value to the owner must be determined without resort to market value).

          In determining actual value to the owner,
the trial court may consider the original cost, replacement cost, opinions of
qualified witnesses, the property’s use, and any other reasonably relevant
facts.  Gulf States, 79 S.W.3d at 566 (quoting Allstate Ins. Co. v.
Chance, 590 S.W.2d 703, 704 (Tex. 1979)).  A property owner may testify
about the value of his personal property.  Id. (citing Porras v.
Craig, 675 S.W.2d 503, 504 (Tex. 1984));  T.R.S. v. State, 663
S.W.2d 920, 922 (Tex. App.—Fort Worth 1984, no writ) (citing Crisp, 369
S.W.2d at 326).

1.  Property Damages

          In MCM’s first issue, it argues that because
Salter failed to offer proof that his property had no “recognized market
value,” he was barred from testifying about its value.  The supreme court has
held that used household items, like Salter’s property, have no ordinary market
value.  See Crisp, 369 S.W.2d at 328.  The record reflects that Salter presented
evidence showing that the storage units contained household items from his lake
house.  See id. at 329 (holding that when household goods have no
recognized market value, actual value to the owner must be determined). 
Therefore, once Salter presented evidence showing that his property consisted
of used household items, he was not required to prove that they had no market,
and he was able to testify about their value.  See Gulf States, 79
S.W.3d at 566 (stating that when measuring damages for household goods, “[i]t
is well settled that a property owner may opine about the property’s value”).

          Alternatively, MCM argues that Salter failed
to provide sufficient evidence of the property’s value to support the trial
court’s award of damages.  In support of its contention, MCM relies on Gulf
States, claiming that Salter failed to provide the court with a range of
damages.  See 79 S.W.3d at 567.  However, in Gulf States, the
plaintiff gave the jury a list of items that he had lost but left it up to the
jury, based on their own life experiences, to place a monetary value on those
items.  Id. at 566–67, 570.  The court stated that although in some
situations the replacement value of property is not an appropriate measure of
damages because it could result in an economic gain to the injured party, the
jury has discretion to award damages within the range of evidence presented at
trial.  Id. at 566.  The court concluded that because the plaintiff
offered no evidence whatsoever to provide the jury with a range of damages, he
was not entitled to recovery as a matter of law.  Id. at 567.

          Unlike the plaintiff in Gulf States,
Salter not only testified about the contents of the storage units but also
provided evidence to establish the contents’ monetary value—$97,902.74.  Salter
produced an inventory and valuation of the items contained in the units and
testified that the valuation of the items showed their true value to him.  See
Allstate, 590 S.W.2d at 704 (holding that the trier of fact may consider
replacement costs to determine the actual value to the owner) (quoting Crisp,
369 S.W.2d at 329); cf. Gulf States, 79 S.W.3d at 566.  Further,
although the items were eight years old, the trial court heard no evidence to
indicate that they were in disrepair; rather, the testimony was that their condition
was excellent.  Therefore, Salter presented evidence that showed that the
household items’ value to him at the time they were sold was $97,902.74.

          In response, MCM presented evidence that
Salter was given the opportunity to buy his property back for $1,000.  Although
MCM did not expressly argue that Salter’s property was worth only $1,000, it
appears that the trial court inferred that it was MCM’s contention that the property
was worth only $1,000.  Hence, MCM’s evidence, along with Salter’s estimated
replacement cost, provided the trial court with a range of damages upon which
it could exercise its discretion.  See Gulf States, 79 S.W.3d at 566.

          At closing, the trial court expressly stated
that it did not believe that the property was worth $97,000 or only $1,000,
acknowledging the range of damages it had been presented.  Seeking additional
guidance, the trial court allowed counsel to argue; Salter’s attorney argued
that Salter should receive one-third of the replacement cost—approximately
$32,000, and MCM’s attorney argued only that Salter had failed to prove his
case.

          Because the trial court was free to award
Salter any amount of damages within the range presented, although it awarded
damages based on Salter’s attorney’s suggested amount, its award was within the
range presented at trial, and therefore, it did not abuse its discretion.  See
id.; Price Pfister, Inc. v. Moore & Kimmey, Inc., 48 S.W.3d 341,
352 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (upholding a damage
award within the range of evidence presented at trial, even though part, but
not all, of the award was based on the plaintiff’s speculation).  As there was
more than a scintilla of evidence to support the amount awarded by the trial court,
and as the evidence presented at trial was not so weak or so contrary to the
overwhelming weight of all the evidence to be factually insufficient, we
overrule MCM’s first issue.

2.  Offset Damages

          In its second issue, MCM argues that the
trial court should have awarded $580 to MCM for Salter’s delinquent rental
fees.  The right of offset is an affirmative defense, and the burden of
pleading and of proving the facts necessary to support it are on the party
asserting the right to the offset.  Brown v. Am. Transfer & Storage Co.,
601 S.W.2d 931, 936 (Tex.), cert. denied, 449 U.S. 1015 (1980).  When a
party attacks the legal sufficiency of an adverse finding on an issue for which
he had the burden of proof, he must demonstrate that the evidence established,
as a matter of law, all vital facts in support of the issue.  Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001) (citing Sterner v. Marathon
Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)).

          After Salter filed suit, MCM filed a counterpetition,
seeking $583 in delinquent rental fees for the five months’ rent that Salter
owed MCM under the lease agreement after the $202 from the sale of the property
to Reiter had been deducted from the original $785.  At trial, MCM offered
evidence that showed Salter owed $291.50 for each unit, totaling $583, and
Salter admitted that he owed MCM the delinquent payments.  In its findings of
fact and conclusions of law, the trial court found that Salter’s property was
worth $32,000—the exact amount awarded to Salter—and recognized that the
parties had formed a legally enforceable contract; however, it did not address
MCM’s claim for Salter’s breach of that contract.  We hold that MCM
conclusively established its right to Salter’s delinquent fees and that no
evidence supports the trial court’s failure to award MCM those damages. 
Therefore, MCM is entitled, as a matter of law, to an offset in the amount of
$583.   We sustain MCM’s second issue.

IV.  Conclusion

          Having overruled MCM’s first issue and
sustained its second issue, we modify the trial court’s judgment to incorporate
MCM’s $583 offset, decreasing Salter’s award to $31,417, and affirm the trial
court’s judgment as modified.  See Tex. R. App. P. 43.2(b); Khorshid,
Inc. v. Christian, 257 S.W.3d 748, 763–64 (Tex. App.—Dallas 2008, no pet.)
(holding that appellant established his right to an offset for delinquent taxi
stand fees as a matter of law); Smith v. Colonial Grp., Inc., No.
10-05-00354-CV, 2006 WL 3028084, at *4 (Tex. App.—Waco Oct. 25, 2006, no pet.)
(mem. op.) (offsetting appellant’s damages against the actual damages rendered
against him and affirming the judgment as modified).

 

                                                                             BOB
MCCOY

                                                                             JUSTICE

 

PANEL:  GARDNER, MCCOY, and GABRIEL, JJ.

 

DELIVERED:  November 10, 2011









[1]See
Tex. R. App. P. 47.4.